IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-03396-G |
| | § | |
| LORIE DAVIS, Director, | § | DEATH PENALTY CASE |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
|     Respondent. | § | |

**RESPONDENT'S REPLY TO PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION FOR LEAVE TO FILE A SUR-REPLY**

On March 28, 2019, Cade filed his amended petition. ECF No. 79 (Amd. Pet.). The Director filed her answer on July 26, 2019. ECF No. 82 (Ans.). On November 12, 2019, Cade filed his reply, to which he attached a supplement to his appendix. ECF No. 98 (Reply). On December 11, 2019, the Director filed a motion for leave to file a sur-reply to address the newly presented declarations in Cade's supplemental appendix. ECF No. 99 (Mot.). Cade timely filed his response in opposition on December 23, 2019. ECF No. 101 (Resp.). The Director's reply is therefore due fourteen days from that date, on January 6, 2020. L.R. 7.1(f).

**ARGUMENT**

In his opposition, Cade erects a straw man by misinterpreting the Director's request as a complaint against him first addressing procedural defenses in his reply and against this Court affording him the final say on procedural defenses. *See*

*generally* Resp. Under that faulty interpretation,[1] he proceeds to his unpersuasive estoppel and timeliness arguments. Resp. at 1, 2, 9–16. But these arguments address a motion the Director never filed and an argument the Director never made.

The Director does not dispute the scheduling order, nor does she dispute that the scheduling order presumes Cade to have the last word on procedural defenses. Rather, she asserts that Cade defied the scheduling order's prohibition against Cade presenting new material facts in his reply brief. *See generally* Mot. This clear and unequivocal instruction attempted to ensure both sides would have a full and fair presentation of the facts upon which to argue their claims, and it is under that premise that Cade was clearly afforded the final reply to the Director's procedural defenses. But Cade's violation of the scheduling order subverted that procedure. To rectify this subversion, the Director respectfully seeks leave to respond to the newly and improperly presented material facts.

I.   **This Court Clearly and Unequivocally Prohibited Cade from Presenting Material Facts in His Reply Brief.**

The Director seeks leave to file her sur-reply to address the material facts that Cade first presented as a supplemental appendix to his reply brief. *See generally* Mot. Cade violated the scheduling order's instruction that, "[t]he Reply shall not raise new claims or new material facts in support of existing claims." ECF No. 61 at 10; *see also*

---

[1] For example, Cade alleges that the Director argued that "Cade's arguments on cause and prejudice [were] 'improperly' filed after the Answer." Resp. at 3 (citing Mot. at 5). The Director stated that "Cade has circumvented the Director's response to these *material facts* by improperly filing them after the State's opportunity to respond under the scheduling order." Mot. at 5 (emphasis added). Cade's entire opposition hinges on this misinterpretation of the Director's motion.

2

ECF No. 50 (original scheduling order) ("Any reply must be limited to the arguments raised in the answer and shall not include any new allegations of fact or new grounds for relief."). Very briefly, Cade actually attempts to address the Director's argument that the material facts were improper, arguing that the restriction against such material facts was limited to facts in support of the merits of claims pled in his petition, and that therefore the restriction would not apply to "responses to procedural defenses, which do not support any claims as such[.]" Resp. at 4.

Cade's convoluted interpretation of the scheduling order is unpersuasive. A "material fact" is a "fact that is significant or essential to the issue or matter at hand; esp., a fact that makes a difference in the result to be reached in a given case." *Black's Law Dictionary* (11th ed. 2019). Facts presented to show cause for the non-exhaustion of unexhausted claims are certainly "significant or essential [and] make a difference to the result to be reached," as this Court could not grant relief on the merits of those unexhausted claims without a finding of cause. *See Coleman v. Thompson*, 501 U.S. 722 (1991). Therefore, the attachment of attorney declarations—material facts—in support of existing claims was a violation of the scheduling order.

II. **Including the Declarations in the Appendix Appended to Cade's Amended Petition Would Have Been Consistent with Due Process, the Habeas Rules, and the Scheduling Order.**

Despite Cade's argument that the Director is raising an objection to the scheduling order, the Director explicitly conceded that "this Court's scheduling order permitted Cade to respond to the Director's procedural defenses in his reply[.]" Mot. at 4. The Director seeks leave because Cade appended new declarations to his reply in violation of the scheduling order. *See generally* Mot. Cade has not even attempted

3

to explain why he could not have appended these declarations to his amended petition other than arguing that requiring him to "predict the State's arguments about procedural default because he was barred from presenting in his Reply evidence related to procedural defenses he did not predict" would "contravene the purpose of Habeas Rule 5(e)," and that it would violate his due process rights. Resp. at 5–6.

These arguments are unpersuasive. Cade did not need to predict with exact accuracy what the State would argue because he was already required to explain which claims were unexhausted and "state why" the claims were not exhausted. ECF No. 61 at 9. Cade concedes that "[t]he section of the Scheduling Order related to the Amended Petition . . . [c]onsistent with the requirements of the form appended to the rules Governing § 2254 cases in the U.S. District Courts ("Habeas Rules"), and Habeas Rule 2(d), . . . required Mr. Cade to identify where his claims were exhausted." Resp. at 5. But the section of the scheduling order requiring Cade to "state why" his unexhausted claims were not exhausted is also consistent with the requirements of form appended to the rules governing § 2254 cases and Habeas Rule 2(d). *See* N.D. Tex. Misc. Order 13 (Oct. 15, 2010) (page eight, instruction twenty-three, on the form adopted by the miscellaneous order). Therefore, this requirement is explicitly contemplated under the habeas rules and Cade points to no authority showing that the requirement violates due process.

Because Cade was required to state why his unexhausted claims were not exhausted, and because he chose to argue ineffective assistance of habeas counsel (IAHC) as the reason why his unexhausted ineffective assistance of trial counsel

(IATC) claims were not exhausted in his amended petition, he could have appended any declarations supporting his IAHC arguments to his amended petition. As the Director argued in her motion, there is nothing in the declarations that Cade could not have developed before filing his amended petition, and Cade fails to make any specific argument refuting this point. Mot. at 4–5. The inclusion of those declarations in the amended petition appendix would not have affected his ability to brief his claims within the page limits.[2] This is the most straightforward interpretation of the scheduling order, and unsurprisingly, it also is the most equitable interpretation for all parties. Cade has provided no credible argument that he could not have followed this procedure. However, his failure to do so can be remedied by allowing the Director to respond to newly presented facts in a sur-reply.

### III. The Director Is Not Untimely, as She Does not Object to the Scheduling Order or Seek to Amend Her Answer.

Cade further attempts to confuse the issues by casting the Director's motion for leave as an objection to the scheduling order's page limits, an objection to the scheduling order granting Cade the final word on procedural defenses, and an attempted amended petition. Resp. at 1–2, 9–12. He further misinterprets the

---

[2] As the Director noted, if Cade needed additional factual development to address the Director's answer, he could have sought leave to amend or supplement his appendix at the reply stage. Mot. at 5. He argues in response that "[t]his is an incorrect reading of the Local Rules governing motion practice in the Northern District, as there is no motion for leave requirement within LR 7.1(i), which speaks to appendices." Resp. at 14 n.9. But the fact that the local rules do not presume that leave is needed to supplement or amend an appendix is superseded by this Court's scheduling order, which explicitly precludes the presentation of new material facts in the reply brief. ECF No. 61 at 10; L.R. 83.1 ("Notwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious."). Therefore, leave was required to deviate from the restrictions of the scheduling order.

Director's argument: "The State's argument is that Mr. Cade should have raised cause and prejudice in the Petition, and that by leaving those arguments to the Reply, he deprived the State of an opportunity to be heard." Resp. at 9 (citing Mot. at 5). This misinterpretation of the Director's filing is the foundation of Cade's timeliness and waiver arguments.

First, Cade argues the Director waived any objection to being without a reply to Cade's cause and prejudice arguments. *Id.* The Director has raised no objection to the scheduling order; rather, the Director explicitly conceded that "this Court's scheduling order permitted Cade to respond to the Director's procedural defenses in his reply." Mot. at 4. The Director could not have been more unequivocal—she seeks leave to respond to improperly filed new material facts, not newly made arguments against procedural defenses. *See generally id.*

Cade then argues that the Director should have filed an amended answer in lieu of a sur-reply, and that the Director is therefore untimely. Resp. at 11–13. But a sur-reply has been accepted as the proper remedy when new material facts are presented in a reply brief. *See* Mot. at 2–3. As Cade concedes, in *Ward*, the Director "was genuinely surprised by the petitioner's cause-and-prejudice arguments," Resp. at 7, and yet this Court allowed a sur-reply, not an amended answer. *Ward v. Stephens*, No. 3:10-cv-2101-N, (N.D. Tex. May 9, 2012), ECF No. 41; *see also Cargill v. Director*, Civ. No. 6:17cv562, (E.D. Tex. Aug. 16, 2019) ECF No. 47 (Order granting the Director's motion for leave to file a sur-reply where Cargill first raised IAHC in a reply brief and "attached new evidence to her reply"). Cade does not cite to a single

6

scenario in which a court has suggested the preferred remedy to new evidence in a reply is an amended answer as opposed to a sur-reply. His assertions of untimeliness under the federal rules governing amended answers are inapplicable here as the Director did not file—nor was she under any obligation to file—such an amended answer.

Cade also complains that the Director's filing of a sur-reply instead of an amended answer was a circumvention of the 160-page limit on the Director's answer. Resp. at 11–13. But this assumes that the Director could not have sought leave for more pages if Cade had appended the declarations to his amended petition. The local rules presume that a petitioner be afforded 125% of the Director's total pages death penalty habeas cases. L.R. 7.5. However, Cade has been afforded 250 total pages to the Director's 160, roughly 156% of the Director's allowed pages. The proper question is whether this Court would have granted the Director an extension of merely seventeen pages to file her answer if Cade had properly filed his habeas attorney declarations before the Director's answer.[3] Equity would certainly suggest the Director would be entitled to those pages in that event, and therefore she is entitled to them in a sur-reply.

---

[3] Even if the Director's motion for leave is granted, the Director would be afforded roughly 177 total pages of briefing to Cade's 250 allowed pages of briefing—240 of which he used. Even after this, the Director would be afforded less briefing than contemplated by the local rules, as 125% of 177 is roughly 221 pages. Cade's fifty-page reply would still be roughly twenty-eight percent of the Director's 177 pages, more than the twenty-five percent contemplated by the local rules. L.R. 7.5.

Cade complains that granting the Director these pages now, after he was denied his full request of twenty additional pages[4] for his reply would "amount to changing the rules after the game is underway solely to benefit one team at the expense of the other." Resp. at 12. But Cade is the party that violated the "rules after the game [was] underway" and the Director merely seeks to remedy that violation.

## IV. Cade's Claim of Judicial Estoppel Is Meritless.

Cade argues that the Director should be judicially estopped from filing her sur-reply because she has "aggressively pursued curtailed proceedings in this Court regardless of the impact on fairness."[5] Resp. at 13. As Cade argues, judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id*. at 13–14 (citing *Smith*

---

[4] Cade is operating under the assumption that, if the Director was afforded a 177-page answer, his request for a sixty-page reply would have been granted. But granting leave for a sixty-page reply after a 177-page answer would have afforded Cade a reply roughly thirty-four percent as long as the Director's hypothetical 177-page answer. Such an extension would not have been warranted. *See* L.R. 7.5.

[5] This characterization of the State as pursuing curtailed proceedings is refuted by the record. The Director agreed to a sixty percent increase in pages for Cade to file his amended petition. ECF No. 31. Cade then argued that the local rules did not *require* him to legally brief his petition, and that if such briefing were required, he would need an additional eighty pages to do so. ECF Nos 58, 64. The Director opposed this request through her opposition to Cade's motion for reconsideration and objections to the magistrate's order. ECF Nos. 59, 65. This Court then granted Cade an additional forty pages, not because his argument was well taken, but only "to avoid another wave of motions seeking unjustified—and unexplained—extensions of the page limitations contained in this court's local rules[.]" ECF No. 66 at 6. Moreover, Cade also received an additional sixty percent increase to file a forty-page reply. ECF No. 61 at 9. The Director opposed Cade's request for an *additional* twenty-page extension for Cade's reply brief, but did not oppose a ten-page extension, which this Court ultimately granted. ECF Nos. at 96, 97. Overall, having been afforded 200 pages to file his petition and fifty pages to file his reply brief, Cade has received a 100% increase in pages for all his pleadings under the local rules. L.R. 7.5. His complaint of curtailed proceedings is simply not credible.

*v. Dallas County Hosp. Dist.*, 3:13-CV-0792-G, 2014 WL 6991482, at *3 (N.D. Tex. Dec. 9, 2014). But the cases cited by Cade are wholly inapposite. They apply to bankruptcy debtors who failed to disclose unliquidated claims in bankruptcy proceedings to minimize their assets and then attempted to adjudicate those claims subsequently. *Smith*, 2014 WL 6991482, at *3–4; *see also Reed v. City of Arlington*, 650 F.3d 571, 572 (5th Cir. 2011) ("The question before the en banc court is whether judicial estoppel bars a blameless bankruptcy trustee from pursuing a judgment that the debtor—having concealed the judgment during bankruptcy—is himself estopped from pursuing."). Cade has provided no authority establishing that a party is estopped from seeking a sur-reply to respond to new evidence brought in a reply brief merely because the party previously opposed a page limit extension.

Moreover, the Director's oppositions to Cade's excessive requests for more pages are not inconsistent with the Director's assertion that Cade should have appended his declarations to his amended petition, as doing so would not have required Cade to exhaust pages in the amended petition.[6] Ans. at 40; Mot. at 5 (making same argument). And the Director's motion for leave is not inconsistent with

---

[6] Cade asserts the Director's characterization of the declarations as "generic grievances" about OCFW policy and mere recitations of fact is somehow in conflict with the characterization that they are new material facts. Resp. at 14–15. But "mostly generic grievances" and "mere recitations of fact" are not mutually exclusive from "new" material facts, nor are they synonymous with "repetitive" factual support. Cade submitted declarations mostly consisting of complaints that OCFW was underfunded, understaffed, overworked, inexperienced and poorly managed. Appx. at 6782–814. While these are "generic" grievances, Cade points to nothing in the state court records or his initial appendix that would indicate they are "repetitive of factual support that Mr. Cade relied upon in prior pleadings." Resp. at 14. They are indeed new material facts that could and should have been included in the appendix appended to Cade's amended petition.

9

her previous recognition that she would not be afforded an opportunity to file a reply in support of her procedural defenses, Resp. at 15, as she now seeks leave to file a sur-reply, not because Cade responded to her procedural defenses, but because he dilatorily filed new material facts in violation of the scheduling order.

And contrary to Cade's argument, *id.* at 15–16, the Director would not derive any unfair advantage from being granted leave. While the scheduling order did not contemplate the Director filing a sur-reply, it also did not contemplate new material facts being raised at the reply stage—something that clearly disadvantages the Director. Allowing the Director to respond to this evidence does not disadvantage Cade, it merely remedies the disadvantage caused by Cade. Not only does Cade fail to point to any authority showing estoppel applies here, he also fails to show the equitable concerns underlying estoppel apply here.

## CONCLUSION

For the above reasons, the Director respectfully requests that this Court grant her motion for leave to file a sur-reply.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    JEFFREY C. MATEER
    First Assistant Attorney General

    MARK PENLEY
    Deputy Attorney General for
    Criminal Justice

    EDWARD L. MARSHALL
    Chief, Criminal Appeals Division

|  |  |
|---|---|
| * Counsel of Record | s/ Ali M. Nasser<br>ALI M. NASSER*<br>Assistant Attorney General<br>State Bar No. 24098169<br><br>P. O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>(512) 936-1400<br>(512) 936-1280 (Facsimile) |

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 2, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to lead counsel, who has consented in writing to accept this Notice as service of this document by electronic means:

Tivon Schardl
Federal Public Defender-Western District of Texas
Capital Habeas Unit
504 Lavaca Street Suite 960
Austin, TX 78701

Joseph Perkovich
Phillips Black Inc.
PO Box 4544
New York, NY 10163

 s/ Ali M. Nasser
ALI M. NASSER*
Assistant Attorney General

11