IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil No. 3:17-CV-03396-G-BT |
| | § | |
| LORIE DAVIS, Director, | § | DEATH PENALTY CASE |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

**RESPONDENT'S SUR-REPLY TO PETITIONER'S REPLY**

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

\* Counsel of Record

ALI M. NASSER\*
Assistant Attorney General
State Bar No. 24098169

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (Facsimile)

*Counsel for Respondent*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

SUR-REPLY .................................................................................................... 1

I.      The *Martinez* Standard ......................................................................... 3

II.     General Complaints of Lack of Resources, Lack of Oversight, Heavy Caseloads, and Inexperience Are Insufficient to Prove a Claim of Ineffectiveness. .......................................................................... 4

III.    Habeas Counsel Were Not Deficient for Foregoing a Meritless State of Mind Defense (Claim four). ............................................................ 8

IV.     Habeas Counsel's Performance in Evaluating, Investigating, and Presenting Mitigating Evidence (Claim Eighteen) Was Not Ineffective. .......................................................................................... 13

        A.      Hiring of experts .................................................................. 13

        B.      Presentation of mitigating evidence through lay witnesses ............................................................................. 15

        C.      Presentation of mitigating evidence through expert witnesses ............................................................................. 17

        D.      Presentation to state habeas court ..................................... 19

        E.      Conclusion ........................................................................... 19

V.      State Habeas Counsel Were not Ineffective for Foregoing a Claim That Trial Counsel Failed to Rebut Future Danger Evidence (Claim 11). ............................................................................................ 20

CONCLUSION ............................................................................................... 21

CERTIFICATE OF SERVICE ......................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019)................................................. 12

*Bradley v. State*, 277 S.W. 147 (Tex. Crim. App. 1925) ................................. 8, 9

*Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007)......................................... 20

*Coleman v. Thompson*, 501 U.S. 722 (1991)....................................................... 8

*Cullen v. Pinholster*, 563 U.S. 170 (2011) .......................................................... 2

*Davila v. Davis*, 137 S. Ct. 2058 (2017) ............................................................. 3

*Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000) ................................... 13, 15

*Duff-Smith v. Collins*,  973 F.3d 1175, 1182 (5th Cir. 1992) (5th Cir. 1992) ... 2

*Green v. Johnson*, 160 F.3d 1029 (5th Cir. 1998)........................................ 7, 20

*Harrington v. Richter*, 562 U.S. 86 (2011)............................................... Passim

*Hernandez v. Stephens*, 537 F. App'x 531 (5th Cir. 2013) ................................ 8

*Hinton v. Alabama*, 571 U.S. 263 (2014) ....................................... 13, 14, 15, 16

*In re Medina*, 475 S.W.3d 291 (Tex. Crim. App. 2015) ................................... 21

*Jones v. Barnes*, 463 U.S. 745 (1983).............................................................. 12

*Koch v. Puckett*, 907 F.2d 524 (5th Cir. 1990) ................................................. 20

*Kossie v. Thaler*, 423 F. App'x 434 (5th Cir. 2011)......................................... 12

*Martinez v. Ryan*, 566 U.S. 1 (2012) ........................................................ Passim

*Moore v. Dretke*, 369 F.3d 844 (5th Cir. 2004)................................................... 2

*Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014)...................................................... 3

*Rompilla v. Beard*, 545 U.S. 374 (2005) ......................................................... 12

*Segundo v. Davis*, 831 F.3d 345 (5th Cir. 2016).............................................. 13

*Smith v. Robbins*, 528 U.S. 259 (2000) ......................................................... 7, 12

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................. 4, 7, 13, 14

*Trevino v. Thaler*, 569 U.S. 413 (2013) .......................................................... 3

*Turner v. Epps*, 412 F. App'x 696 (5th Cir. 2011) ........................................... 13

*United States v. Ballard*, 779 F.2d 287 (5th Cir. 1986) ................................... 21

*Willy v. Admin. Review Bd.*, 423 F.3d 483 (5th Cir. 2005) ............................. 21

*Wong v. Belmontes*, 558 U.S. 15 (2009)........................................................ 20

## Statutes

28 U.S.C. § 1746............................................................................................. 2

28 U.S.C. § 2254............................................................................................. 1

28 U.S.C. § 2254(b)(1)(B)(ii) ......................................................................... 5

Tex. Penal Code §§ 19.02 (b), 19.03(a) .......................................................... 9

# SUR-REPLY

This is a habeas corpus case filed under 28 U.S.C. § 2254 by Petitioner Tyrone Cade. Cade has filed his amended petition, to which the Respondent has filed an answer. ECF Nos. 79, 82 (Answer). Cade has now filed a reply in which he asserts that he can overcome the procedural default of his unexhausted claims under *Martinez v. Ryan*, 566 U.S. 1 (2012), because his state habeas counsel were ineffective for failing to present those claims in state court. ECF No. 98 (Reply) at 15, 22–23, 32–33, 41–42. In support of his ineffective assistance of habeas counsel (IAHC) claims, he has also attached several new declarations from attorneys and investigators formerly employed by the Office of Capital and Forensic Writs (OCFW).[1] Appx. at 6782–814. As the Director was unable to address this evidence in her answer, she does so here. The Director incorporates by reference the anticipatory arguments made

---

[1] Cade also attaches a statement from Rhea Scott. Appx. at 6815–19. It is perplexing that Cade attaches a statement this late in the proceedings from a witness who testified at trial and also submitted a statement to state habeas counsel. 51 RR 31 (ECF No. 69-51 at 31); 4.SHCR-02 at 303 (ECF No. 71-4 at 306). Cade only cites to this new declaration once, to show that Cade was abused and teased for his nocturnal enuresis. Reply at 46. As mentioned in the Director's answer, even if trial counsel did not present this evidence, they did present ample evidence of Cade's childhood abuse. Answer at 147–48. Scott provided an affidavit to habeas counsel also going into vivid detail regarding Cade's tumultuous childhood. 4.SHCR-02 at 303–05. Habeas counsel also presented evidence of abuse due to Cade's nocturnal enuresis at the evidentiary hearing. *See infra* p. 18. Therefore, additional evidence that Cade was sometimes abused for his nocturnal enuresis is cumulative both of what trial counsel and habeas counsel presented.

against Cade's claims for cause and prejudice under *Martinez* raised in her answer. Answer at 40–42. While the Director limits her sur-reply to responding to these declarations, she does not concede any allegation or argument made in Cade's petitions or reply.[2]

In support of claims four, eleven, and eighteen, Cade argues that state habeas counsel failed to present these claims in state court due to their inexperience, lack of funding, lack of resources, overburdened caseload, and lack of supervision.[3]  Reply at 22–23, 32–33; 41–42. The Director responds to these allegations *in the alternative* with respect to claims four and eighteen, as the Director's position is that these claims are properly exhausted, and the new evidence offered in support is barred by *Cullen v. Pinholster*, 563 U.S. 170, 181

---

[2] However, the Director will address Cade's accusation that she "affirmatively misrepresents" the requirements of 28 U.S.C. § 1746 by stating that it requires a witness declaration be sworn. Reply at 1–2 (citing Answer at 45). Here, the Director's argument was simply that the witness statements attached by Cade contained no declaration of truth in compliance with the statute—a point that remains uncontested. *Id.* at 2. Nevertheless, the Director concedes that her use of the phrase "sworn to" as a synonym for "certified," "verified," or "stated" in the context of a statutory provision dealing with unsworn declarations is confusing. To be clear, the Director does not maintain that such declarations must be formally "sworn." Yet, the Director continues to assert that a verification of truth is required (and is lacking here). .

[3] The portions of the affidavits that reference any alleged lack of decorum during state habeas proceedings or general complaints about the state habeas process are irrelevant and not cognizable here. Appx. at 6798–801. *See, e.g., Moore v. Dretke,* 369 F.3d 844, 846 (5th Cir. 2004) ("It is axiomatic that 'infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.'") (quoting *Duff-Smith v. Collins*, 973 F.3d 1175, 1182 (5th Cir. 1992)).

(2011).[4] Moreover, while Cade does not cite to his newly presented evidence in support of his other unexhausted claims, *see generally* Reply, all arguments made in this sur-reply regarding the effectiveness of state habeas counsel apply to the procedural default of those claims. To the extent that the Director does not address each and every allegation found within Cade's newly presented evidence, the Director generally denies all facts except those supported by the record and generally denies that the facts therein are indicative of the ineffectiveness of state habeas counsel.

## I.   The *Martinez* Standard

An allegation of ineffective assistance of state habeas counsel invokes the narrow procedural default exception developed in *Martinez* and applied to Texas's postconviction scheme in *Trevino v. Thaler*, 569 U.S. 413, 428 (2013), for "a single claim—ineffective assistance of trial counsel[.]" *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). To take advantage of the exception, an inmate must show "that (1) his state habeas counsel was constitutionally deficient in failing to include the claim in his first state habeas application; and (2) the underlying ineffective-assistance-of-trial-counsel claim is 'substantial.'" *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir. 2014) (quoting *Martinez*, 566 U.S. at

---

[4] Contrary to Cade's argument, Reply at 20–21, 40, by arguing that the claims are exhausted, the Director does not thereby waive the right to assert a procedural default in the event this Court finds the claims unexhausted; the Director properly preserved her right assert such a bar in that scenario. Answer at 84, 165.

13–14). An ineffective assistance of trial counsel (IATC) claim is "substantial" when it "has some merit," but "insubstantial" when "it does not have any merit" or is "wholly without factual support." *Martinez*, 566 U.S. at 14, 16.

A reviewing court looks to *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether state habeas counsel was ineffective. *Martinez*, 566 U.S. at 14. Therefore, to establish deficiency, an inmate must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. There is a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. An inmate's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

## II.   General Complaints of Lack of Resources, Lack of Oversight, Heavy Caseloads, and Inexperience Are Insufficient to Prove a Claim of Ineffectiveness.

Cade has attached six declarations to his reply from three former OCFW attorneys, Jeremy Schepers, Elizabeth Stewart, and Joanne Heisey, and three former OCFW investigators, Jamie Zapata, Adrian de la Rosa, and Elizabeth Aguirre, to bolster his *Martinez* claim. Appx. at 6782–814. These witnesses complain that OCFW did not properly train its attorneys or investigators, assigned attorneys or investigators too many cases that they were unprepared for, lacked necessary funding and resources, and did not provide guidance to

its employees. *See generally id*. However, a careful review of these statements suggests that—while the attorneys believe that OCFW is underfunded and understaffed and its attorneys are inexperienced and overworked—the attorneys do not appear to believe that they themselves, were professionally deficient.[5]  *See generally id*.

Limited resources do not establish that counsel were ineffective. *See Harrington v. Richter*, 562 U.S. 86, 107 (2011) ("Counsel [is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective [ ] tactics and strategies."). If anything, these statements and Cade's associated argument appears to constitute an assault on the Texas system of postconviction representation—in particular, to the State's allocation of resources to the public defender organization charged with representing indigent defendants in habeas proceedings. This is not really a *Martinez* argument, but more appropriately an argument under 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing exhaustion when "circumstances exist that render such process ineffective to protect the rights of the applicant."). Cade produces no Fifth Circuit precedent applying § 2254(b)(1)(B)(ii) wholesale to the Texas

---

[5] Despite these alleged obstacles, Cade's current counsel apparently thought the state habeas work of De La Rosa and Aguirre to be adequate enough to hire them to work for the Western District Federal Public Defender. Appx. at 6807, 6810. Apparently, the Northern District Public Defender also believed Jeremy Schepers performed well enough for OCFW to become the supervisor for the Capital Habeas Unit of the Northern District Federal Public Defender. Appx. at 6782.

state postconviction system or OCFW in particular. This Court should decline Cade's invitation to do so on its own initiative.

Also, Cade's attached statements wholly fail to tether the complaints therein to any discernable failure in representation. The declarants struggle to articulate how specific information was overlooked due to their alleged inexperience, lack of funding, lack of oversight, or overly large caseload. *See generally* Appx. at 6782–814. For example, Stewart complained that she was assigned Cade's case to conduct the evidentiary hearing without being able to "learn the case," thus overwhelming her and leading her to omit certain objections and arguments; however, Stewart does not indicate what these objections or arguments were. Appx. at 6789–90. Similarly, Heisey complains that she felt OCFW's social history report on Cade was more aggravating than mitigating, with no explanation for her opinion that it simply relied on racial stereotypes. *Id.* at 6794. Cade's investigators filed similarly vague affidavits. Jamie Zapata, Adrian De La Rosa, and Elizabeth Aguirre *all* complained that they were not properly trained in mitigation. *Id.* at 6803–05, 6807–08, 6811. But again, they fail to explain how this alleged failure in training and oversight affected Cade's application specifically. *See id.*

And where the witnesses *do* attempt to tie their complaints in with Cade's representation, their attempts abjectly fail. For example, Jamie Zapata argues that then-OCFW Director Brad Levenson's "hostility" negatively

impacted Cade's application by undermining Heisey's confidence and "slowing her progress." Appx. at 6805. Such a conclusory and unsupported statement is inconsequential to the issue of habeas counsel's effectiveness. *Id*. at 6792–802 (the Director cannot find any mention of such hostility in Heisey's declaration). Or, in De La Rosa's example of assignments not being done in a timely manner, she recounts how she was surprised that no one had contacted a friend of Cade's mother who remembered when Cade's father attacked his mother with a hammer. *Id*. at 6808. However, even in this anecdote, De La Rosa contacted the friend and "she did in fact corroborate the account of the attack[.]" *Id*. at 6808–09. De La Rosa's competent performance as an investigator is not an example of habeas counsel's ineffectiveness.

Therefore, to the extent that Cade relies on these wholly conclusory assertions, his IAHC claims are without merit. *Green v. Johnson*, 160 F.3d 1029, 1041 (5th Cir. 1998) ("[C]onclusory assertions of prejudice are insufficient to satisfy the second prong of *Strickland*.").

Regardless, prejudice cannot be shown in the absence of a reasonable probability that, but for state habeas counsel omitting a particular ground of error, relief would have been granted. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). As argued in the Director's answer, Cade's underlying IATC claims are wholly without merit. *See generally* Answer. Therefore, Cade fails to make the "substantial" showing required by *Martinez* that he was prejudiced by state

habeas counsel's alleged deficiencies. 566 U.S. at 14 (requiring a showing "that the underlying [IATC] claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"). He also therefore fails to make a showing of prejudice under *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Martinez*, 566 U.S. at 18 (remanding to address prejudice); *Hernandez v. Stephens*, 537 F. App'x 531, 542 (5th Cir. 2013), cert. denied,134 S. Ct. 1760 (2014).

## III. Habeas Counsel Were Not Deficient for Foregoing a Meritless State of Mind Defense (Claim four).

In his fourth claim for relief, Cade argues that trial counsel were ineffective for failing to investigate a defense that negated Cade's intent to commit murder by arguing that he was asleep at the time of the murders. Amd. Pet. at 50–70. Now, Cade argues that state habeas counsel were ineffective for failing to present that same alternative theory in state court. Reply at 22–23.

Cade first notes that habeas counsel were unaware that Texas provided a legal defense at the guilt phase of trial, and therefore they were deficient. *Id.* at 22. In support, he cites to the declarations of Schepers and Heisey, who both concede they were unaware of *Bradley v. State*, 277 S.W. 147 (Tex. Crim. App. 1925), when they prepared for Cade's state application. Appx. 6785, 6795. This proves nothing. Even if habeas counsel were unaware of this specific case, presumably—and hopefully—Schepers and Heisey are aware "that a person

8

cannot be held criminal responsible for acts committed . . . while he or she is unconscious." 22 C.J.S. *Criminal Law: Substantive Principles* § 130 (2019). Indeed, Texas has codified that very rule in its capital murder statute, by requiring a specific intent as an element of the offense. Tex. Penal Code §§ 19.02 (b), 19.03(a). Nothing in the attached statements dispels or refutes the presumption that Schepers or Heisey were aware that they could provide a complete defense to capital murder *if* they could show that Cade lacked the requisite intent.[6]

Rather, common sense likely deterred habeas counsel from presenting a theory so at odds with the evidence. As mentioned in the Director's Answer, Cade never stated he fell asleep to anyone,[7] including law enforcement. Answer

---

[6] *Bradley* identifies somnambulism as a "species of insanity" and ignores any distinction between an affirmative defense and complete mens rea defense. *Bradley*, 277 S.W. at 149 ("The legal consequences of somnambulism should be precisely those of insanity, which it so nearly resembles. The party should be exempt from punishment for his criminal acts.") (quoting Bouvier's Law Dict. (Rawle's 3d Ed.) vol. 3, p. 3091). Therefore, it is unclear how this case would even have stood for the proposition that a sleepwalking defense should have been chosen over an insanity defense at trial.

[7] The only reference to Cade potentially falling asleep is in Proctor's report, where he states that Cade told him he could not remember if he was tossing and turning or if he fell asleep. 54 RR SX 185 (page thirteen of report) (ECF No. 69-56 at 69). However, Proctor then testified that Cade told him he was tossing and turning because he could not sleep. 48 RR 168. (ECF No. 69-46 at 168). As far as the Director can find, no other expert, investigator, or attorney who worked on Cade's trial or state habeas litigation notes that he ever mentioned falling asleep before the murders, and Cade points to no such evidence, instead incorrectly claiming that Cade's "account to Dr. Victoroff was consistent with his account to Dr. Proctor." *See* Reply at 27. This is refuted by Proctor's note that Cade "acknowledged that at the time of the alleged offense he knew what he was doing was wrong[.]" 54 RR SX 185 (page fourteen of report).

at 77–78. Moreover, in his confessions to law enforcement, his written manifesto, and statement to Dr. Proctor, Cade mentions his motive and reasons for the stabbings. *Id*. According to Cade's new evidence, his statements to state habeas counsel's investigators were "generally consistent" with the statements he provided to law enforcement, which notably did not include his falling asleep before the murders. Appx. at 6814; Answer at 77–78. In fact, Those statements were apparently weighed heavily by state habeas counsel in their determination of what claims to present: "My recollection is that the operating assumption of the attorneys was that there were no guilt-innocence issues to investigate because Mr. Cade had confessed to killing the victims." Appx. at 6812.

But Cade protests that habeas counsel should have investigated his alleged mental illnesses and how they affected his actions at the time of the murders. *See* Reply at 22–23. Habeas counsel claim they were aware that Cade had reported hearing voices and was mentally ill. Appx. at 6784, 6788–89, 6794. But OCFW was also aware that trial counsel had hired numerous experts, none of whom noted these supposed symptoms. Dr. McGarrahan, a neuropsychologist, testified that she did not note any brain damage, psychiatric issues, or psychological issues in Cade's medical records. 47 RR 23, 35–36. Dr. Lisa Clayton, a psychiatrist, had conducted an insanity evaluation of Cade and found that he was not insane, in part, because "he did not have a

10

severe mental illness." 4.SHCR-02 at 189. Dr. Emily Fallis, a psychologist, concurred, finding that Cade did not suffer from a severe mental illness and knew his actions were wrong when he committed the offense. *Id.* at 192.

Habeas counsel also presumably knew that Dr. Proctor had reported that Cade *denied* hearing voices and found that Cade had "no known history of severe mental health difficulties." 54 RR SX 185 (pages eight and fourteen of report). In fact, when habeas counsel did develop evidence that Cade suffered from brain damage and traits of schizophrenia as part of their punishment phase IATC claim, the state habeas court rejected those diagnoses through explicit findings relying on the testimony of Dr. Proctor. 9.SHCR-02 at 741. Accordingly, OCFW's policy of not wasting resources on cumulative experts appears eminently reasonable. Finally, while Dr. Victoroff argues that Cade's "readily apparent" myoclonic jerks are indicative of a neurological disorder and are "so apparent that [the disease] does not require neurological training to detect," Appx. at 6505–06, not a single expert, attorney, or investigator noted any such symptoms as far as the Director can find in the record. Victoroff himself posits that Cade's movement disorder could have "post-dated Dr. Proctor's examination." *Id.* at 6506.

In light of this mountain of evidence that Cade did not suffer from brain impairment and of Cade's multiple confessions in which he never claimed to fall asleep before the murders, OCFW can hardly be faulted for choosing not to

11

"scour the globe" for an expert who would reach a conclusion without considering all countervailing evidence. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005); *see also* Appx. at 6479 (Victoroff cautioning that he only relied on documents provided by counsel and did not review Cade's entire medical and legal portfolio).

State habeas counsel's "winnowing out" this "weaker argument[] . . . far from being evidence of incompetence, is the hallmark of appellate advocacy." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *see Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (appellate counsel "need not, and should not, raise every nonfrivolous claim, but rather should 'winnow out weaker arguments' to maximize the likelihood of success on appeal.") (quoting *Smith*, 528 U.S. at 288). In *Ayestas,* the Fifth Circuit noted that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal" and ultimately held that state habeas counsel was not ineffective for avoiding "claims likely to be barred as successive." *Ayestas v. Davis*, 933 F.3d 384, 394 (5th Cir. 2019), *cert. pet. filed*. Similarly, OCFW was not ineffective here for forgoing a claim likely to be rejected due to the overwhelming evidence in the record.

To the extent that OCFW did not seek an expert due to budgetary constraints, again, "[c]ounsel [is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective

12

[ ] tactics and strategies." *Richter*, 562 U.S. at 107. Habeas counsel reasonably chose not to waste resources manufacturing a claim that would conflict with their own client's statements and the record. Such strategic decision-making is certainly not ineffective. *Strickland*, 466 U.S. at 690–91.

## IV. Habeas Counsel's Performance in Evaluating, Investigating, and Presenting Mitigating Evidence (Claim Eighteen) Was Not Ineffective.

### A. Hiring of experts

Cade's allegation that "counsel made no attempt to retain experts[,]" Reply at 41, is refuted by the record. OCFW's policy was to retain a neuropsychologist to review the battery of tests done at trial and ensure the tests were properly scored. Appx. at 6784. The record confirms that Dr. Underhill was hired to do just that. 9.SHCR-02 at 310 (ECF No. 71-9 at 317); 4.SHRR at 8–9 (ECF No. 72-4 at 8–9). While Heisey complains that OCFW would not seek additional resources beyond the review of trial counsel's expert, this policy was strategic, as OCFW then considered the "box was checked" for purposes collateral review. Appx. at 6793. Given limited funding, and the deference given trial counsel and its decision to hire experts,[8] it is certainly not

---

[8] *See Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016) (counsel "should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses"); *Dowthitt v. Johnson*, 230 F.3d. 733, 748 (5th Cir. 2000) (counsel is not required to "canvass[] the field to find a more favorable defense expert"); *see also Turner v. Epps,* 412 F. App'x 696, 704 (5th Cir. 2011); *cf. Hinton v. Alabama,* 571 U.S. 263, 275 (2014) ("The selection of an expert witness is a paradigmatic example of the

ineffective to forego expending resources on claims with lower prospects for success. *See supra* p. 12.

Stewart concedes that, by the time of Cade's evidentiary hearing, OCFW did allow the attorneys to develop mental health evidence. Appx. at 6788. In fact, they were permitted to call a psychiatrist, Dr. Silverman, to testify. *Id*. at 6789. More than that, OCFW *hired another neuropsychologist*, Dr. Joan Mayfield, who reviewed the battery of tests conducted by Dr. McGarrahan. *Id*. at 6800. While Mayfield did not testify, according to Cade's own proffered statements, she pointed out alleged misstatements made by the State's experts. *Id*.

The record shows the extent of Mayfield's services. OCFW submitted a motion for funding to obtain the services of Dr. Mayfield on October 4, 2016. 9.SHCR-02 at 304–08. The purpose of retaining Mayfield was to review testing by Dr. Price or Dr. Proctor, to consult with Dr. Silverman or, "[d]epending on upon the results of her view of Dr. Price's testing . . . to conduct her own neuropsychological testing of Mr. Cade." *Id*. at 305. A later motion for funding reveals that Mayfield "conducted two full days of neuropsychological testing . . . scored the testing, and reviewed records." *Id*. at 382.

---

type of 'strategic choic[e]' that, when made 'after thorough investigation of the law and facts' is 'virtually unchallengeable.'") (citation omitted)).

In addition to this investigation, OCFW also developed mental health evidence through its expert Dr. Silverman. At the evidentiary hearing, Silverman reported Cade's frontal lobe impairment, PTSD, and traits of schizophrenia. 4.SHRR at 72. At a later hearing date, Silverman was recalled after reading the reports of Dr. Price and Dr. Proctor. 6.SHRR at 8 (ECF No. 72-6 at 8). At that date, Silverman testified that he believed Cade hears voices and reiterated that he suffers from traits of schizophrenia. *Id*. at 10–23. Silverman also testified that he consulted with Dr. Underhill and reviewed his underlying data in preparing his diagnosis. *Id*. at 58–59.

Despite Cade's baseless claim that OCFW did not have the benefit of expert advice and testimony, it appears OCFW retained two neuropsychological experts, one of whom conducted her own testing and both of whom advised in some capacity. It also appears that OCFW retained a psychiatrist who testified that Cade suffered from several of the very maladies alleged here in federal court. To the extent OCFW did not hire each and every expert Cade now proffers or present each and every articulable fact, such matters of degree are not grounds for ineffectiveness. *Dowthitt*, 230 F.3d at 743.

**B.    Presentation of mitigating evidence through lay witnesses**

Cade also alleges that state habeas counsel failed to prepare and raise mitigating evidence that trial counsel should have presented at punishment.

15

Reply at 41. Among their general complaints, the state habeas personnel claim that they lacked a proper mitigation strategy and had difficulty coordinating with family members due to their overburdened caseload. Appx. at 6796–97.

Cade's state habeas application tells a radically different story. State habeas counsel clearly had a mitigation strategy, alleging that trial counsel were ineffective for failing to present mitigating evidence of Cade's early life, adolescent years, and adult life. 4.SHCR-02 at 3 (ECF No. 71-4 at 6). Not only did OCFW thoroughly investigate this evidence, but they also presented substantially similar evidence that Cade brings here, including affidavits from Cade's relatives, coaches, and a teacher, all attesting to the poverty, abuse, and neglect he encountered growing up. *Id.* at 152.

In statements attached to Cade's state application, relatives of Cade attested to Jerry Cade's jealous, abusive, and bizarre behavior, including his physical abuse of Cade's mother, Barbara. *Id.* at 291, 295, 299, 312. They noted that Cade was a witness to this abuse and other instances of inter-family violence. *Id.* at 311–12. Relatives also discussed Barbara's abuse and neglect of Cade, as she would disappear from his life for weeks at a time to go out and party, forcing him to stay with his aunts. *Id.* at 291, 296, 299, 304. They noted the prevalent drug and alcohol use in Cade's family. *Id.* at 291, 300, 303, 304, 311. Cade's family also discussed the impoverished conditions of his upbringing, including limited food, shelter, and utilities. *Id.* at 299–300, 304.

16

These conditions were apparent to Cade's football coaches and his teacher. *Id.* at 308, 273, 277–78. Cade's brother, Jerry Scott, provided live testimony of these living conditions at the evidentiary hearing. 5.SHRR at 18–59 (ECF No. 72-5 at 18–59). At that hearing, OCFW also admitted a statement from Opal Grant, Cade's paternal aunt, in which she also described the erratic behavior of Jerry Cade. 8.SHRR DX 48 (ECF No. 72-15 at 222–28).

Through Cade's relatives and chiropractor, OCFW presented evidence of Cade's back pain as a significant stressor at the time of the murders. 4.SHCR-02 at 285, 288–89, 296, 304. They also presented ample evidence regarding the devastating impact of Cade's football injury. *Id.* at 272–75, 277–78, 292, 296, 300, 308; *see also* 8.SHRR DX 34 (ECF No. 72-13 at 532–99) (Floyd Barber Deposition).

### C.    Presentation of mitigating evidence through expert witnesses

State habeas counsel also presented mitigating evidence through expert testimony. First, OCFW presented a social history of Cade's life prepared by Scott Bowman, a professor in criminal justice. 4.SHCR-02 at 155–80. Summarizing much of the turmoil in Cade's upbringing and applying it to his expertise, Bowman concluded that, "[f]actors beyond Tyrone's control, including but not limited to the absence of a consistent mother figure and the complete absence of *any* father figure, educational instability, and a school

environment that was more concerned about the athlete than the young man, all inexorably shaped him during his formative years." *Id.* at 176.

OCFW also proffered the testimony of social worker Laura Sovine at the evidentiary hearing, in which she offered a biopsychosocial assessment of Cade. 5.SHRR at 93. In preparation for her assessment, Sovine interviewed nine witnesses, including relatives, coaches, and teachers, and interviewed Cade for four hours. *Id.* at 128. She also read several parts of the reporter's record and affidavits in preparation for her assessment. *Id.* at 128–29. In support of her assessment, Sovine noted Cade's family history of mental illness, substance abuse, and violence. *Id.* at 134. She observed that Cade suffered neglect and abuse, witnessed violence, did not have food and supervision, was sexually abused, was mocked and beaten for his nocturnal enuresis, and was traumatized by the loss of a football career which had given him connections to resources and people unavailable in his home life. *Id.* at 134–53. Sovine concluded that, "Tyrone was born into a extremely violent household, was exposed to extreme levels of trauma, depravation, abuse and neglect" and that while football provided "a few of the things he needed" that "support and social structure . . . went away and he wasn't able to successfully complete the tasks to become a functioning adult." *Id.* at 164.

### D.     Presentation to state habeas court

Having developed this evidence, OCFW then presented proposed findings of fact and conclusions of law, arguing that trial counsel were ineffective for failing to present this mitigating evidence at the punishment phase of trial. 9.SHCR-02 at 426–43. They also presented findings on how this childhood trauma could have impacted Cade's mental health and development and therefore should have been presented at trial. *Id*. at 443–50. The proposed findings also addressed the testimony of Dr. Silverman, who testified that Cade exhibited symptoms of schizophrenia, PTSD, and brain damage. *Id*. at 451–56. Finally, OCFW also argued that more evidence of Cade's back injury and stressors should have been presented. *Id*. at 456–57.

### E.     Conclusion

As Cade's state habeas counsel largely presented the same evidence Cade now presents in federal court, he fails to show that habeas counsel's ineffectiveness gives cause to present claim eighteen. Indeed, several of the facts presented in Cade's federal petition, including his predisposition to mental illness, a diagnosis of mental illnesses, his father's erratic behavior, his turbulent upbringing, his back injury, his mental illnesses, and his lost football career, *see generally* Amd. Pet. at 121–80, were investigated, developed, and presented by state habeas counsel. Such cumulative evidence fails to show that

habeas counsel were ineffective. *Wong v. Belmontes*, 558 U.S. 15, 22 (2009); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007).

## V.   State Habeas Counsel Were not Ineffective for Forgoing a Claim That Trial Counsel Failed to Rebut Future Danger Evidence (Claim 11).

Cade does not explain how habeas counsel's performance deprived him of presenting claim 11—IATC for failure to rebut future dangerousness evidence—to the state habeas court. Rather, in a conclusory manner, he complains that the claim was not presented due to state habeas counsel's lack of funding, supervision, experience, and flexibility. Reply at 32–33. As explained above, these general complaints do not establish that habeas counsel were ineffective. *See supra* Part II.

Moreover, the conclusory nature of this argument does not rebut the presumption that counsel's decision not to present this claim was reasonable. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *see Green*, 160 F.3d at 1041. That presumption is only strengthened by habeas counsel's thorough investigation into Cade's background and mental health, in which they clearly uncovered much of the evidence presented in support of this claim—including Cade's ongoing stressors at the time of the offense and his coachable demeanor during his football career. *See supra* Part IV. Habeas counsel likely did not present this claim because they recognized the frivolity of arguing that Cade's crime was "out of character" given his disturbing criminal history of sexual

20

assault, aggravated assault, and homicide, among other things. *See* Answer at 22–36. Statement of Facts Relating to Punishment. As Cade's offered declarations are silent on that decision, he fails to "overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." *Strickland*, 466 U.S. at 689 (quotation omitted).

## CONCLUSION

For these reasons, Cade has failed to meet his burden under *Martinez*. Therefore, his unexhausted claims are procedurally defaulted.[9]

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

---

[9] While the Director believes that the current record is sufficient to rebut Cade's arguments and support the denial of relief, to the extent that the Court wishes to entertain granting relief or permitting factual development (either with respect to the default or the merits), the Director requests that the Court order Cade to divulge both OCFW's and trial counsel's files to the Director for evaluation. Cade has called into question the competence of both OCFW and trial counsel and has selectively submitted statements and filed materials to support his accusation. Cade cannot use privilege as a sword and a shield, and his IATC and IAHC claims constitute a waiver of his attorney-client privilege with respect to his accusations. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege."); *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986); *In re Medina*, 475 S.W.3d 291, 302 (Tex. Crim. App. 2015). The Director should be allowed to review counsel's relevant file materials to make any rebuttal arguments applicable.

MARK PENLEY
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

 s/ Ali M. Nasser
ALI M. NASSER
Assistant Attorney General
State Bar No. 24098169
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 936-1400
Fax: (512) 936-1280
Email: Ali.Nasser@oag.texas.gov

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I certify that on December 11, 2019, I electronically filed the forgoing pleading with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following counsel of record, who consented in writing to accept the Notice as service of this document by electronic means:

Tivon Schardl
Federal Public Defender-Western District of Texas
Capital Habeas Unit
919 Congress Suite 950
Austin, TX 78701

Joseph Perkovich
Phillips Black, Inc.
PO Box 4544
New York, NY 10163

                                    s/ Ali M. Nasser
                                   ALI M. NASSER
                                   Assistant Attorney General

23