UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:17-CV-3396-G-BT |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | CAPITAL HABEAS CASE |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**PETITIONER'S OBJECTIONS TO FINDINGS AND CONCLUSIONS**

**OF THE MAGISTRATE JUDGE**

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER
TIVON SCHARDL
Capital Habeas Unit Chief
FL Bar No. 73016
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)
Tivon_schardl@fd.org

JOSEPH J. PERKOVICH
Phillips Black, Inc.
PO Box 2171
New York, NY 10008
(212) 400-1660 (tel.)
j.perkovich@phillipsblack.org

Attorneys for Petitioner

# TABLE OF CONTENTS

I.   INTRODUCTION & SUMMARY OF ARGUMENT ........................................... 1

II.  RELEVANT BACKGROUND ................................................................. 2

    A.   THE FACTS .................................................................................. 2

    B.   THE PROCEDURAL HISTORY .......................................................... 4

III. STANDARD OF REVIEW ................................................................... 6

IV.  OBJECTIONS ................................................................................. 7

    A.   THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S
        FINDINGS AND ANALYSIS REGARDING WHETHER MR. CADE'S
        CLAIMS ARE EXHAUSTED ............................................................ 7

    B.   THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S
        REASONING REGARDING THE APPLICATION OF *MARTINEZ V.
        RYAN*, 566 U.S. 1 (2012), AND *CULLEN V. PINHOLSTER*, 563 U.S.
        170 (2011) ................................................................................ 12

    C.   THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S
        ERRONEOUS UNDERSTANDING OF INTELLIGENCE TESTING
        SCORES .................................................................................... 15

V.   CONCLUSION ............................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Johnson,*
    338 F.3d 382 (5th Cir. 2003) ................................... ..................................... 11

*Atkins v. Virginia,*
    536 U.S. 304 (2002) ................................... .............................. 15, 16

*Bradley v. State,*
    277 S.W. 147 (Tex. Crim. App. 1925) ................... ....................................... 3

*Brumfield v. Cain,*
    576 U.S. 305 (2015) ................................... .............................. 15

*Calderon v. Waco Lighthouse for the Blind,*
    630 F.2d 352 (5th Cir. 1980) ................................... .................................. 7

*Cullen v. Pinholster,*
    563 U.S. 170 (2011) ................................... .............................. 12, 14

*Dallas Indep. Sch. Dist. v. Woody as Next Friend of K.W.,*
    No. 3:15-CV-1961-G, 2018 WL 6304401 (N.D. Tex. Nov. 30, 2018) .......................... 6

*Davila v. Davis,*
    582 U.S. ___, 137 S. Ct. 2058 (2017) ................................... .............................. 12, 13

*Gallow v. Cooper,*
    570 U.S. 933 (Jun. 27, 2013) ................................... .................................. 13

*Galloway v. Quarterman,*
    No. 3:04-CV-0234-G, 2008 WL 5091748 (N.D. Tex. Dec. 3, 2008) .................... 10, 11

*Gray v. Netherland,*
    518 U.S. 152 (1996) ................................... .................................. 9

*Hernandez v. Estelle,*
    711 F.2d 619 (5th Cir. 1983) ................................... .................................. 7

*Martinez v. Ryan,*
    566 U.S. 1 (2012) ................................... .............................. 12, 13

*Moore v. Quarterman,*
    491 F.3d 213 (5th Cir. 2007) ........................................... ................................... 14

*Moore v. Texas,*
    137 S. Ct. 139 (2017).......................................... ........................................ 15

*Morris v. Dretke,*
    413 F.3d 484 (5th Cir. 2008) .......................................... ................................. 11

*In re Murchison,*
    349 U.S. 133 (1955) ........................................... ........................................... 6

*Peretz v. United States,*
    501 U.S. 923 (1991) ........................................... ........................................... 6

*Rhines v. Weber,*
    544 U.S. 269 (2005) ........................................... ........................................... *passim*

*Rompilla v. Beard,*
    545 U.S. 374 (2005) ........................................... ........................................... 10

*Ruiz v. Quarterman,*
    504 F.3d 523 (5th Cir. 2007) .......................................... ................................. 13

*Strickland v. Washington,*
    466 U.S. 668 (1984) ........................................... ................................. 10, 11, 12, 13

*Thomas v. Arn,*
    474 U.S. 140 (1985) ........................................... ........................................... 2

*Trevino v. Thaler,*
    569 U.S. 413 (2013) ........................................... ........................................... 13

*United States v. Wilson,*
    864 F.2d 1219 (5th Cir. 1989) .......................................... ............................. 6

*Vasquez v. Hillery,*
    474 U.S. 254 (1986) ........................................... ................................... 10, 14

*Wainwright v. Sykes,*
    433 U.S. 72 (1977) ........................................... ........................................... 13

*Walker v. Savers,*
    583 Fed.App'x 474 (5th Cir. 2014)....................................... ................................... 7

*Wilder v. Cockrell,*
    274 F.3d 255 (5th Cir. 2001) ................................. ...................................... 13

**Statutes & Rules**

28 U.S.C. § 636(b) ................................. .............................. 1, 6, 7

28 U.S.C. § 636(b)(1) ................................. .................................. 5

28 U.S.C. § 2254(d) ................................. ........................... 1, 13, 14

Fed. R. Civ. P. 72(b) ................................. ................................... 1

Fed. R. Civ. P. 72(b)(2) ................................. ............................... 5

Fed. R. Civ. P. 72(b)(3) ................................. ........................... 6, 7, 12

Tex. Code Crim. Proc. art. 11.071 ................................. ................. 12

Tex. Code Crim. Proc. art. 11.071, § 5 ................................. ............. 5

Tex. Code Crim. Proc. art. 11.071, § 5(a)(2)-(3) ............ ...................... 8

**Other Authorities**

Jim Chen, *The Mystery and the Mastery of the Judicial Power*, 59 Mo. L. Rev.
    281, 300 (1994) ................................. ..................................... 7

2A Guide to Judiciary Policy, Ch. 3, Section 310.10(a) ... ...................... 7

Alex Kozinski, Stephen Reinhardt, *Please Don't Cite This! Why we Don't Allow
    Citation to Unpublished Opinions*, Cal. Law (June 2000) ........................ 7

2 LaFave, Substantive Criminal Law § 9.4(b) ................ ..................... 3

Marin K. Levy, *The Mechanics of Federal Appeals: Uniformity and Case
    Management in the Circuit Courts*, 61 Duke L. J. 315 (2011) ..................... 6

Jeffrey J. Rachlinski & Andrew J. Wistrich, *Gains, Losses, and Judges: Framing
    and the Judiciary*, 94 Notre Dame L. Rev. 521 (2018) ......................... 7

Andrew M. Siegel, *Constitutional Theory, Constitutional Culture*, 18 U. Penn. J.
    Con. L. 1067, 1112 (2016) ................................. ....................... 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:17-CV-3396-G-BT |
| | § | |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Institutions Division, | § | CAPITAL HABEAS CASE |
| | § | |
| Respondent. | § | |

**OBJECTIONS TO FINDINGS AND CONCLUSIONS**

TO THE HONORABLE A. JOE FISH, UNITED STATES DISTRICT JUDGE:

**I.      INTRODUCTION & SUMMARY OF ARGUMENT**

Petitioner TYRONE CADE, by and through his undersigned counsel, and pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), makes the following objections to the portions of Document 117 ("Findings and Conclusions" or "F&C") set out below. Mr. Cade obviously does not object to the findings and analysis dictating the recommendation that this Court grant Mr. Cade's Motion for Stay and Abeyance (Doc. 100). The Magistrate Judge correctly concluded that Mr. Cade satisfied the criteria for stay/abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), with respect to his intellectual disability claim. However, the F&C both fails to address the parties' dispute regarding exhaustion of ineffective-assistance claims, and addresses, in factually and legally erroneous terms, issues such as the application of 28 U.S.C. § 2254(d) that were not raised in the papers related to the Motion because they

are irrelevant under *Rhines*. Mr. Cade must file objections to those portions of the F&C in light of the Magistrate Judge's explicit admonition as to waiver. F&C 16.

Notwithstanding their irrelevance under *Rhines*, the objected-to findings touch on important questions such as the scope and nature of review and whether this Court should hold an evidentiary hearing on procedural defenses. F&C 3-5. Further, the purpose of "filing ... objections to a magistrate's report [is to] enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."[1] Mr. Cade submits these objections so that this Court will not have an erroneous first impression of those issues even though the F&C's recommendation, if adopted, could moot them.[2]

Upon review *de novo*, this Court should not adopt the objected-to portions of Magistrate Judge's analysis but adopt the recommendation to grant the Motion.

## II.     RELEVANT BACKGROUND

### A. THE FACTS

Before dawn on March 27, 2011, Tyrone Cade was aroused from sleep by Mischell Fuller, the woman he loved and depended on. Unaware of what he was doing, Mr. Cade stabbed her with one of the four knives she habitually kept under her mattress. He had never been violent towards her before. Desaree Hoskins, Ms. Fuller's 18-year-old daughter, heard the commotion and ran to her mother's aid. Mr. Cade, still in a state of confusional arousal, stabbed Ms. Hoskins. Both women died.

---

[1] *Thomas v. Arn*, 474 U.S. 140, 147 (1985).
[2] The Magistrate Judge appeared to recognize that it was unnecessary to address issues related to claims other than Claim 9, as to which she recommended stay/abeyance, because she did not analyze Claims 4, 11, 15, and 18 under *Rhines* at all.

As he was emerging from his altered mental state, Mr. Cade wrote a confession. Then he turned himself in and again confessed to the killings. But the physical evidence contradicts Mr. Cade's confessions. These contradictions do not appear to be contrived because (a) Mr. Cade's version is inculpating and (b) Mr. Cade has never sought to avoid responsibility for the deaths. (On the contrary, Mr. Cade has been suicidal with remorse, *see* Reply Appx. (Doc. 98-1) at 6805, a condition for which he was recently removed from the Polunsky Unit, where he is normally confined, and hospitalized.)

Mr. Cade's descriptions don't match the physical evidence for the same reason his actions don't match his prior behavior or feelings towards Ms. Fuller and Ms. Hoskins: at the time of the stabbings, Mr. Cade was in an altered mental state that experts call confusional arousal. That mental state has been recognized by physicians and the criminal courts for centuries as a defense to murder. *See, e.g., Bradley v. State*, 277 S.W. 147, 149 (Tex. Crim. App. 1925); *see also* 2 LaFave, Substantive Criminal Law § 9.4(b) (3d ed.) (collecting cases). Mr. Cade's longstanding history of sleep disorders, Post-Traumatic Stress Disorder, a series of traumatic brain injuries, and schizophrenia, fit the profile of people who have experienced, and been exonerated for, confusional arousal. If either Mr. Cade's trial counsel or his state habeas counsel had carried out the requisite investigation and inquiry under prevailing professional norms, the evidence of Mr. Cade's confusional arousal would have emerged in time for it to bear upon the Dallas County prosecution. But they did not, and the evidence has been raised for the first time in this Court. Mr. Cade's Motion seeks an opportunity to present that evidence to the Texas Court of Criminal Appeals ("TCCA").

### B.  THE PROCEDURAL HISTORY

On September 9, 2014, Mr. Cade filed his state habeas corpus petition. Ex. A. As relevant here, Claim 1 of that petition ("SHC 1") asserted that trial counsel presented an insanity defense despite lacking factual support for it. *Id.*, at 31-44. That claim contains no allegation that "trial counsel rendered ineffective assistance by failing to raise a mental health defense ... other than that of insanity," which is how the Magistrate Judge indirectly summarized Claim 4 of Mr. Cade's federal habeas petition ("FHC 4"). F&C 2. Neither SHC 1, nor state-habeas Claims 2 or 3, which assert ineffective-assistance at the penalty phase, asserted that trial counsel unreasonably failed to present the defense that Mr. Cade was not capitally liable or culpable because he was neither aware nor in control of his actions when he stabbed the victims. *See* Ex. A at 44-76 (penalty-phase ineffective-assistance claims from state petition).

On October 25, 2018, Mr. Cade timely filed the instant federal habeas petition. Doc. 33. On March 28, 2019, Mr. Cade timely filed the operative Amended Petition. Doc. 79. Texas timely filed its Answer on July 26, 2019. Doc. 82. On November 12, 2019, Mr. Cade timely filed a Reply. Doc. 98.

Over Mr. Cade's objection, the Magistrate Judge permitted Texas to file a Sur-Reply on January 23, 2020. Doc. 110. Mr. Cade filed his "Final Reply" on March 23, 2020. Doc. 114.

On December 18, 2019, Mr. Cade filed his Motion for Stay and Abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), seeking an opportunity to present the following

five claims to the Texas Court of Criminal Appeals in a subsequent application for writ of habeas corpus pursuant to Tex. Code Crim. Proc. art. 11.071, § 5:

- **Claim 4** which asserts under the Sixth Amendment that the verdict is constitutionally unreliable due to the objectively unreasonable failure of trial counsel to consider, investigate, and present a mental-state defense other than insanity, *viz.* confusional arousal;

- **Claim 9** which asserts the death sentence imposed on Mr. Cade violates the Eighth Amendment because he is intellectually disabled;

- **Claim 11** which asserts the judgment is invalid under the Sixth Amendment because the finding of future dangerousness is constitutionally unreliable due to trial counsel's objectively unreasonable failure to present readily available evidence;

- **Claim 15** which asserts the cumulative effect of constitutional errors requires that the judgments of conviction and sentence imposed on Mr. Cade be vacated;

- **Claim 18** which asserts the death judgment is constitutionally unreliable due to trial counsel's objectively unreasonable failure to investigate and present readily available mitigation evidence.

On July 2, 2020, the Magistrate Judge filed the Findings and Conclusions. However, they were not served until July 6, 2020. Ex. B. Accordingly, Mr. Cade files these Objections now. 28 U.S.C. § 636(b)(1) (party may file objections "[w]ithin fourteen days after being served with ... proposed findings and recommendations"); Fed. R. Civ. P. 72(b)(2) (same).

The Magistrate Judge correctly identified the five claims that Mr. Cade addressed in his Motion. F&C 2. The F&C made no findings regarding two of them, Claims 11 and 15.

The Magistrate Judge erroneously concluded that Claims 4 and 18 were exhausted, *id.* at 3-4, and, on the basis of Claim 9, recommended the Motion be granted. *Id.* at 6-14.

### III.    STANDARD OF REVIEW

Section 636(b)(3) of Title 28, Fed. R. Civ. P. 72(b)(3), and "this court's prior precedent ... require [it] to review de novo the portions of the magistrate judge's [F&C] to which a party has raised objections, and to review the remaining portions for plain error." *Dallas Indep. Sch. Dist. v. Woody as Next Friend of K.W.*, No. 3:15-CV-1961-G, 2018 WL 6304401, at *4 (N.D. Tex. Nov. 30, 2018) (Fish, J.). Review *de novo* means the District Judge will "ma[k]e his own determination based upon the record and unrestrained by the findings and conclusions of the magistrate." *United States v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989).[3]

---

[3] Mr. Cade invokes his "personal right to an Article III adjudicator." *Peretz v. United States*, 501 U.S. 923, 929 n.6 (1991). The metadata in the F&C identifies a staff attorney as the author who worked with the Magistrate Judge. It is impossible for Mr. Cade to know the extent of the staff attorney's authorship. In order to ensure that the District Judge has the fullest opportunity to make the independent determinations *Wilson* describes, Mr. Cade respectfully objects to the same staff attorney providing the Judge with an assessment of these Objections or otherwise framing the Court's review of them. Besides the impossibility of conducting truly *de novo* review of objections to their own work, *see In re Murchison*, 349 U.S. 133, 136 (1955), staff attorneys are at-will employees. Lacking life tenure or the fixed terms of magistrate judges, staff attorneys have an incentive not to identify errors in their work that might be identified in a party's objections, and thereby short-circuit independent, unbiased review required by the Due Process Clause, Article III and the Magistrates Act, 28 U.S.C. § 636(b). (Staff attorneys are distinct from law clerks. The Judicial Conference does not consider staff attorneys to be members of a judge's personal staff alongside employees who work in chambers. *See* 2A Guide to Judiciary Policy, Ch. 3, Section 310.10(a) (identifying parties considered judges' personal staff).)

Scholars of the judicial system have recognized that the decision to employ staff attorneys, and "the mechanism used for selecting them" is an institutional arrangement that impacts courts' decision-making. *E.g.*, Andrew M. Siegel, *Constitutional Theory, Constitutional Culture*, 18 U. Penn. J. Con. L. 1067, 1112 (2016); Marin K. Levy, *The*

## IV.   OBJECTIONS

### A.  THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S FINDINGS AND ANALYSIS REGARDING WHETHER MR. CADE'S CLAIMS ARE EXHAUSTED

The F&C erroneously finds Claims 4 and 18 were previously exhausted. F&C 3. As Texas stated in the Answer, the parties agreed that Claims 11 and 15 "were not raised in state court." Ans. (Doc. 82) at 38-39. Texas had recognized this even though Claim 11, like Claims 4 and 18, includes certain allegations that were not raised in state court. The parties' agreement on these claims is not mentioned in the F&C. The F&C does not otherwise

---

*Mechanics of Federal Appeals: Uniformity and Case Management in the Circuit Courts*, 61 Duke L. J. 315 (2011) (noting that whether to assign decision to staff attorney is among those "that exert a powerful influence on the quality of justice that can be obtained from the federal appellate courts"). A study published by the Federal Judicial Center found that staff attorneys who worked closely with appellate judges played a significant role in determining both the process the court used to reach its decision and the result. https://www.fjc.gov/sites/default/files/2012/RSAFCNAD.pdf. Article III Judges have written that opinions in which staff attorneys played an outsized role should not be cited as precedent in part because they do not represent the judge's full consideration. Alex Kozinski, Stephen Reinhardt, *Please Don't Cite This! Why we Don't Allow Citation to Unpublished Opinions*, Cal. Law (June 2000) (available at http://www.nonpublication.com/don't%20cite%20this.htm). Former clerks and scholars have recognized and empirically demonstrated the influence that judicial staff and framing can have on a judge's decision-making. Jim Chen, *The Mystery and the Mastery of the Judicial Power*, 59 Mo. L. Rev. 281, 300 (1994) ("[Supreme Court] law clerks have the first opportunity to endorse, revise, or reject the way in which a litigant has framed the issues in a particular case."); Jeffrey J. Rachlinski & Andrew J. Wistrich, *Gains, Losses, and Judges: Framing and the Judiciary*, 94 Notre Dame L. Rev. 521 (2018) (empirical study of framing on judicial decision-making).

Rule 72(b)(3) and the § 636(b) require the District Judge to review the record independently. *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983); *Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 355-56 (5th Cir. 1980). Allowing the staff attorney who authored the F&C to frame the Judge's view of objections to the F&C inserts a layer of reconsideration between the Judge and the objections although reconsideration is not a substitute for review *de novo. See Walker v. Savers*, 583 Fed.App'x 474, 475 (5th Cir. 2014) (mem.).

explain the conclusion that Claims 4 and 18 are fully exhausted although exhaustion is either disputed or the parties agree it is absent as to similarly situated claims.

Mr. Cade conceded that FHC 4 was "substantially altered" when compared with SHC 1. Am. Pet. (Doc. 79) at 70; *id.* at 50. Texas affirmatively waived an exhaustion defense in its Answer, Doc. 82 at 67-68, but not in its opposition to the *Rhines* motion. Resp. Opp. Mot. Stay (Doc. 104) at 16 n.8. In opposing Mr. Cade's Motion, Texas asserted that federal Claims 4 and 18 would be procedurally barred under § 5. *Id.* at 5. Texas specifically argued that the allegations in Claims 4 and 11 did not establish Mr. Cade's innocence under Tex. Code Crim. Proc. art. 11.071, § 5(a)(2)-(3), *id.* at 6-9, and the TCCA does not recognize ineffective assistance of state habeas counsel, *id.* at 9-11. Those arguments presupposed that the gravamen of FHC 4—that Mr. Cade is innocent because, due to being in a state of confusional arousal he could not have acted with the mental state required for murder—was not presented in a previous application. Neither the Magistrate Judge nor Texas could identify allegations of innocence in Mr. Cade's state-habeas claims.

Texas has never disputed that all allegations related to confusional arousal are unexhausted. On the contrary, Texas argues that the experts whose opinions form the basis of FHC 4, and the related allegations in FHC 18, should not be credited because the experts who examined Mr. Cade before trial, and in state habeas proceedings did not find that he was experiencing confusional arousal at the time he killed Ms. Fuller and Ms. Hoskins. Ans. (Doc. 82) at 76; *id.* at 155 (discussing state post-conviction expert Dr. Silverman).[1]

---

[1] State habeas counsel have provided declarations attesting that they did not investigate or plead a claim related to confusional arousal. Doc. 98-1 (Appx. Reply) at 6784-85 (Decl.

Even the Magistrate Judge's summary of FHC 4 contradicts the conclusion that it is exhausted. The F&C correctly summarizes federal Claim 4 as asserting that Mr. Cade's "trial counsel rendered ineffective assistance by failing to raise a mental defense at the guilt-innocence phase of trial *other than that of insanity.*" *Id.* at 2 (emphasis added). But there is no claim asserting a failure to raise a defense other than insanity in the state-court record.

Despite the clear differences between Mr. Cade's state and federal claims and the parties' briefing of them, coupled with an extensive body of law on when changed allegations render a claim unexhausted, the F&C contains no findings related to the differences and no discussion of the relevant exhaustion law.

In order to satisfy the exhaustion requirement, a petitioner's state-court claim "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996). Everyone agrees that both Mr. Cade's state and federal claims of liability-phase ineffectiveness referenced the Sixth Amendment right to counsel. The question is whether the state claim included "a statement of the facts that entitle the petitioner to relief" in federal court. A habeas petitioner may submit additional evidence in federal court without violating the exhaustion requirement but only if "the supplemental evidence presented by [the petitioner] did not fundamentally alter the legal claim considered by the state courts." *Vasquez v. Hillery,* 474 U.S. 254, 260 (1986); *Galloway v. Quarterman,* No. 3:04-CV-0234-G, 2008 WL 5091748, at \*3 (N.D. Tex. Dec. 3, 2008) (Fish, J.). "The way the Fifth Circuit

---

Jeremy Schepers); *id.* at 6788-89 (Decl. Elizabeth Stewart); *id.* at 6794-95 & 6801-02 (Decl. Joanne Heisey); *id.* at 6803-04 (Decl. Jamie Zapata).

has applied this rule suggests that, so long as the petitioner presents evidence to the state court in some form, he can present it to the federal court in a more fleshed out form." *Galloway*, at \*3. But "the substance of the claim must be raised in state court." *Ibid.*

Under the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), a claim of ineffective assistance has two necessary elements, "[1] deficient performance by counsel [2] resulting in prejudice." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). It is indisputable that Mr. Cade substantially altered his claim such that FHC 4 contains allegations that trial counsel's performance was deficient in an entirely different way, and that prejudice ensued in an entirely different portion of the trial.

The only similar claim raised in state court was SHC 1 which alleged that trial counsel were "ineffective for presenting an unreasonable insanity defense" "even after all three experts they retained to evaluate Cade informed them that he was not insane at the time of the offense." Ex. A at 31. Mr. Cade asserted that his trial counsel's performance was deficient because they "[e]lect[ed] to present an insanity defense, prior to receiving confirmation from their retained expert that such a theory was plausible," *id.* at 37, and continued on that course even after each expert who evaluated Mr. Cade said he was not insane. *Id.* at 37-38. Mr. Cade asserted that a timely and competent investigation would have compelled reasonable counsel to "change[] course." *Id.* at 38. The "decision to present an insanity defense was objectively unreasonable." *Ibid.*

As to the prejudice prong of *Strickland*, SHC 1 asserted that "[t]rial counsel's presentation of this unsupported and unsupportable theory at the guilt/innocence phase caused them to lose credibility with the jury and harmed their presentation of, mitigating

evidence *at the punishment phase.*" Ex A at 34 (emphasis added). SHC 1 repeatedly emphasized that "trial counsel's decision to proceed with their baseless insanity theory ... prejudice[d] their client at the punishment phase." *Id.* at 41, 42-44. SHC 1 asserted no factual or legal theory for finding prejudice in the guilt/innocence phase of trial. *Ibid.*

Where SHC 1 faulted trial counsel for presenting an insanity defense, FHC 4 asserts as deficient performance that trial counsel unreasonably "*failed to* investigate and *present* a meritorious insanity defense" predicated on confusional arousal, a condition that the State concedes was not mentioned in state court. Am. Pet. 50 (emphasis added). Where SHC 1 asserted prejudice only in relation to the penalty-phase verdict, FHC 4 asserts that "[j]urors presented with the whole truth about what happened to Mischell Fuller and Desaree Hoskins would have *acquitted* Mr. Cade of capital murder." *Ibid.* (emphasis added). FHC 4 asserts that the jury should have been able to consider substantial evidence that Mr. Cade lacked the mental state required to be guilty of capital murder under Texas law. *Id.* at 58-59. SHC 1 contains no legal theory related to capital murder liability.

It is well-established that, for a claim to be exhausted, "'evidence that places the claims in a significantly different legal posture must first be presented to the state courts.'" *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2008) (quoting *Anderson v. Johnson*, 338 F.3d 382, 387 (5th Cir. 2003) (cited in *Galloway* at *3)). Despite the glaring factual and legal differences between SHC 1 and FHC 4, the F&C finds the federal claim was "fully litigated" and adjudicated "on the merits" in state court, without even mentioning those differences. F&C 3. Those errors cannot survive de novo review and must be rejected. Fed. R. Civ. P. 72(b)(3).

**B. THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S REASONING REGARDING THE APPLICATION OF *MARTINEZ V. RYAN*, 566 U.S. 1 (2012), AND *CULLEN V. PINHOLSTER*, 563 U.S. 170 (2011)**

The Magistrate Judge clearly erred in failing to identify the differences between the factual and legal theories in FHC 4 and SHC 1. That error led the Magistrate Judge into further error on issues that were not raised in Mr. Cade's Motion, and have no relevance to the application of *Rhines*. Because stay/abeyance is available only for unexhausted claims, *Rhines*, 544 U.S. at 274-75; *id.* at 278, the Magistrate Judge's analysis should have ended with the erroneous conclusion that FHC 4 and FHC 18 were exhausted. Further, the Magistrate Judge correctly concluded that a stay for exhaustion of any claim permits the exhaustion of any additional claims, F&C 14, and, presumably for that reason, did not discuss Claims 11 and 15 at all. Thus, there was no valid legal reason for the F&C to discuss the application of *Martinez* to exhausted claims, F&C 3-4, or whether Mr. Cade was entitled to an evidentiary hearing, *id.* at 5, or whether "ineffective assistance by his state habeas counsel ... furnish[es] an independent basis for federal habeas corpus relief." *Ibid.* Those issues are not part of the Supreme Court's three-prong test for stay/abeyance. *Rhines*, 544 U.S. at 278. Accordingly, this Court should reject those portions of the F&C.

*Martinez* created an equitable exception to the procedural default doctrine where the ineffective assistance of state habeas counsel resulted in a *Strickland* claim being procedurally barred in state court's initial-review collateral proceeding. *Davila v. Davis*, 582 U.S. ___, 137 S. Ct. 2058, 2065 (2017). State habeas review under Tex. Code Crim. Proc. art. 11.071 is such a proceeding. *Trevino v. Thaler*, 569 U.S. 413 (2013). In other words, under *Martinez*, the ineffective assistance of state habeas counsel can constitute "cause" to excuse the

12

procedural default of a *Strickland* claim. *Davila*, 137 S. Ct. at 2065. Mr. Cade mentioned *Martinez* in his Motion because *Rhines* also requires this Court to consider whether Mr. Cade has "good cause" for failing to raise his confusional arousal claim in state court, *Rhines*, 544 U.S. at 277, and the Fifth Circuit has said *Rhines* "intended the district court find 'good cause' in the equitable sense." *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). *See* Mot. (Doc. 100) at 5. But whether *Martinez* applies to a claim that was adjudicated on the merits in state court, has no relevance to the *Rhines* inquiry.

The Magistrate Judge's summary "finding" that Mr. Cade "was not precluded by his state habeas counsel's alleged ineffective assistance from fairly presenting and obtaining a ruling on the merits" of the confusional arousal allegations, F&C 4, cannot be accepted because it is predicated on the clearly erroneous finding that the allegations either were presented or make no difference in an exhaustion analysis. The parties did not dispute that whether the TCCA would find Mr. Cade's claims procedurally barred is an issue the state court should decide in the first instance. *See* Reply Opp. Mot. Stay (Doc. 107) at 5-6 (citing *Wilder v. Cockrell*, 274 F.3d 255, 262-63 (5th Cir. 2001)). Yet, the Magistrate Judge failed to address the state court's interest in applying the law by erroneously failing to apply exhaustion rules.

Mr. Cade argued in his Amended Petition that the equitable exception for the procedural bar of *Wainwright v. Sykes*, 433 U.S. 72 (1977), applies with equal force to the relitigation bar of 28 U.S.C. § 2254(d). *See* Am. Pet. 10 (citing *Gallow v. Cooper*, 570 U.S. 933 (Jun. 27, 2013) (Breyer, J.) (statement regarding denial of *cert.*)). He also invoked the Supreme Court's observation that under traditional exhaustion rules such as *Vasquez v.*

13

*Hillery* (*supra*), a claim that was fundamentally altered in federal court would not have been adjudicated on the merits in state court. *Id.* at 18 (citing *Pinholster*, 563 U.S. at 187 n.11; *Moore v. Quarterman*, 491 F.3d 213, 220 (5th Cir. 2007)). But, as noted above, the Magistrate Judge did not analyze Mr. Cade's claims under exhaustion law, and explained that the requirement of a stay under *Rhines* for Claim 9 moots the other issues.

The Magistrate Judge's error regarding exhaustion leads to an incoherent analysis that this Court should reject. Having failed to identify the glaring differences between Mr. Cade's state and federal claims, the Magistrate Judge invokes the "'backward-looking language'" of 28 U.S.C. § 2254(d), as discussed in *Pinholster*. F&C 4 (quoting *Pinholster* 563 U.S. at 181-82). At the same time, the Magistrate Judge overlooked footnote 11 of *Pinholster* which links the backward-looking exhaustion analysis to the question whether the state court adjudicated the claim presented to the federal court. Under this analysis, this Court must look back on a state court decision regarding allegations the state court never saw. That analysis is wrong under *Pinholster* which requires that federal courts apply § 2254(d) in light of the record before the state court. 563 U.S. at 183.

This Court should reject the chain of erroneous findings and analysis in the F&C regarding federal Claims 4 and 18. By accepting the Magistrate Judge's correct recommendation regarding Claim 9, and enabling Mr. Cade's counsel to present any additional claims or evidence to the state court, this Court will preserve the state court's role in constitutional adjudication, and give the state court the first say on whether a claim is procedurally barred under state law. Critically, this first say would permit this Court to have a final say on a properly complete state court record.

## C. THIS COURT SHOULD REJECT THE MAGISTRATE JUDGE'S ERRONEOUS UNDERSTANDING OF INTELLIGENCE TESTING SCORES

The F&C erroneously posits that the Eighth Amendment prohibition against imposing a death sentence upon the intellectually disabled contemplates a "cutoff" range of IQ score between 70 and 75. F&C 8 (quoting *Brumfield v. Cain*, 576 U.S. 305, 315 (2015) (quoting *Atkins v. Virginia*, 536 U.S. 304, 309 n.5 (2002))). *Brumfield* concerned whether, given the petitioner's 75 IQ score, he could meet Louisiana's threshold for a hearing on the first of the three-part *Atkins* inquiry, *viz.* subaverage measured intelligence. *Moore v. Texas*, 137 S. Ct. 139, 149 (2017) (*Moore I*) (citing *Brumfield*, 576 U.S. at 315-16 ("relying on *Hall* [*v. Florida*, 572 U.S. 701 (2014)] to find unreasonable a state court's conclusion that a score of 75 precluded an intellectual-disability finding"). The Supreme Court in *Hall* emphasized the "inherent imprecision of the [IQ] test itself" and thus the need for the standard error of measurement ["SEM"] in evaluating intelligence. *Moore I*, 137 S. Ct. at 1049. Use of a cutoff IQ score may distort the actual intellectual disability inquiry, which must accommodate the fact that "a person with an IQ score above 70 may have such severe adaptive behavior problems . . . that the person's actual functioning is comparable to that of individuals with a lower IQ score." Diagnostic and Statistical Manual of Mental Disorders (2013 (known as "DSM-5")) (quoted *twice* in *Hall*, 572 U.S. at 712, 723).

At bottom, *Hall*, *Brumfield*, 576 U.S. at 315, and *Moore I*, 137 S. Ct. at 1060-61, each emphasized the importance of SEM because it reflects the statistical "reality that an individual's intellectual functioning cannot be reduced to a single numerical score." *Hall*, 572 U.S. at 713. The Magistrate Judge's focus on a "cutoff" threshold must not confuse the

totality of the *Atkins* inquiry as directed by established, current medical practice and set forth in the Supreme Court's line of cases.

## V.    CONCLUSION

For the foregoing reasons, this Court should reject the objected-to portions of the Findings and Conclusions filed July 2, 2020, and served on July 6, 2020, and enter an order granting Mr. Cade's Motion for Stay and Abeyance.

DATED: July 20, 2020                                Respectfully submitted,

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

*/s/ Tivon Schardl*
TIVON SCHARDL
Capital Habeas Unit Chief
FL Bar No. 73016
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)
Tivon_Schardl@fd.org


*/s/ Joseph J. Perkovich*
JOSEPH J. PERKOVICH
Co-Counsel for Petitioner
Phillips Black, Inc.
PO Box 2171
New York, NY 10008
(212) 400-1660 (tel.)
j.perkovich@phillipsblack.org

Attorneys for Petitioner Tyrone Cade

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July 2020, I electronically filed the foregoing Objections with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Tivon Schardl*
Tivon Schardl