

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:17-CV-3396-G-BT |
| | § | |
| | § | |
| ERIC GUERRERO, Director, Texas | § | |
| Department of Criminal Justice, Cor- | § | CAPITAL HABEAS CASE |
| rectional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MOTION TO DECLARE UNCONSTITUTIONAL AS APPLIED IN THIS CASE SECTIONS 2254(D) AND (E) OF TITLE 28; BRIEF IN SUPPORT**

TO THE HONORABLE A. JOE FISH, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Tyrone Cade moves this Court to declare that 28 U.S.C. §§ 2254(d) and (e) cannot be applied in this case because to do so would violate Article III of the Constitution and the separation of powers. In two recent cases, the Supreme Court held that neither Congress nor the Supreme Court itself may delegate to a non-Article III entity the core judicial power of deciding what the law is, i.e. what the duties or rights the law imposes under the facts as the court finds them. Amendments to §§ 2254(d) and (e) made by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), as applied in Texas, purport to delegate that responsibility state courts that, in Texas, are political entities, like the entities to which Congress and the Court delegated judicial powers. This Court should treat the like cases alike and hold

1

unconstitutional AEDPA's scheme for deference to non-Article III entities' exercise of judicial powers.

This Motion is based on the files and records in this case and the attached brief. Cade requests a hearing and direct Article III consideration of the grounds and contentions raised in support of this Motion. *See Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 675-76 (2015).

On July 21, 2025, counsel for Cade emailed counsel for Texas, Assistant Attorney General Ali Nasser (*see* ECF No. 147), to initiate a discussion of this Motion. Mr. Nasser authorized Cade to inform the Court that the State opposes this Motion.

DATED:  July 23, 2025                    Respectfully submitted,

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

 */s/Tivon Schardl*
TIVON SCHARDL
Chief, Capital Habeas Unit
SBOT #24127495
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)

*/s/ Joseph J. Perkovich*
JOSEPH J. PERKOVICH
Co-Counsel for Petitioner
Phillips Black, Inc.
PO Box 2171
New York, NY 10008
(212) 400-1660 (tel.)
j.perkovich@phillipsblack.org

Attorneys for Petitioner Tyrone Cade

2

## TABLE OF CONTENTS

MOTION ..................................................................................................................... 1

TABLE OF AUTHORITIES ....................................................................................... ii

I.         Introduction and Summary of Argument ................................................ 1

II.       The Challenged Law and its Controlling Interpretations ..................... 2

      A.    The Constitutional Floor: The Habeas Privilege for State
            Prisoners in 1868 ....................................................................... 2

      B.    Section 2254(d) & (e)'s Text and Its Judicial Interpretation ............... 5

      1.    Section 2254(d)'s Relitigation Bar and Exceptions ............................... 5

      2.    Section 2254(e)(1)'s Due-Process Override ............................................. 7

III.      Grounds for Holding §§ 2254(d) and (e) Unconstitutional ................... 8

      A.    AEDPA Plainly Implicates the Separation of Powers ........................... 8

      1.    The Judicial Power ................................................................................ 8

      2.    The Separation of Powers Doctrine ..................................................... 10

      3.    Prolepsis ............................................................................................... 11

      B.    Sections 2254(d) and (e) Are Legislative Encroachments Upon
            Core Judicial Powers ................................................................ 13

      1.    Article III Courts Interpret and Apply Law to Facts ........................... 13

      2.    Article III Courts Create Uniform Interpretations of
            Constitutional Provisions .......................................................... 18

      C.    Sections 2254(d) and (e) Undermine the Institutional Integrity
            of the Judicial Branch .............................................................. 19

      D.    Sections 2254(d) and (e) violate Article III's Case or
            Controversy requirement. ........................................................ 20

IV.      The Constitution Precludes the Application of Sections 2254(d)
       and (e) to Cases Arising from Texas State Courts ............................... 22

V.        Conclusion ................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................. 27

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ................................................................................ 20, 21

*Bank Markazi v. Peterson,*
    578 U.S. 212 (2016) ..................................................... 13, 14, 15, 25

*Beras v. Johnson,*
    978 F.3d 246 (5th Cir. 2020) ................................................................ 12

*Ex parte Bollman,*
    8 U.S. (4 Cranch) 75 (1807) ................................................................. 3

*Bond v. United States,*
    564 U.S. 211 (2011) ............................................................................... 10

*Bostock v. Clayton Cnty., Ga.,*
    590 U.S. 644 (2020) ................................................................................ 8

*Brumfield v. Cain,*
    576 U.S. 305 (2015) ................................................................................ 7

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ......................................................................... 2, 16

*City of Chicago v. Morales,*
    527 U.S. 41 (1999) .................................................................................. 4

*Clinton v. Goldsmith,*
    526 U.S. 529 (1999) ............................................................................... 16

*Cobb v. Thaler,*
    682 F.3d 364 (5th Cir. 2012) ............................................................ 2, 3

*Collins v. Yellen,*
    594 U.S. 220 (2021) ............................................................................... 10

*Commonwealth v. Aves,*
    35 Mass. 193 (1836) ............................................................................... 3

*Corfield v. Coryell,*
    6 F. Cas. 546 (C.C. E.D. Pa. 1823) ..................................................... 3

*Danforth v. Minnesota,*
    552 U.S. 264 (2008) ................................................................................. 5

*Dep't of Homeland Sec. v. Thuraissigiam,*
    591 U.S. 103 (2020) ................................................................................. 2

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ............................................................................ 1, 3

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................................... 16

*Felker v. Turpin,*
    518 U.S. 651 (1996) ............................................................................... 12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ........................................................................ 11, 12

*Greene v. Fisher,*
    565 U.S. 34 (2011) ................................................................................... 5

*Harrington v. Richter,*
    562 U.S. 86 (2011) ....................................................................... 5, 7, 14

*Hayburn's Case,* 2 U.S. (2 Dall.) 409 (1792) ............................................... 19

*Henson v. Santander Consumer USA Inc.,*
    582 U.S. 79 (2017) ................................................................................. 12

*Huawei Techs. USA, Inc. v. FCC,*
    2 F.4th 421 (5th Cir. 2021)................................................................... 16

*Johnson v. Williams,*
    568 U.S. 289 (2013) ......................................................................... 6, 11

*Knowles v. Mirzayance,*
    556 U.S. 111 (2009) ................................................................................. 5

*Lockyer v. Andrade,*
    538 U.S. 63 (2003) ................................................................................... 5

*Loper Bright v. Raimondo,*
    603 U.S. 369 (2024) .......................................................................*passim*

*Loving v. United States,*
    517 U.S. 748 (1996) ............................................................................... 10

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ................................................................... 20

*Ex parte McCardle*,
    73 U.S. 318 (1867) ................................................................................... 4

*McCleskey v. Zant*,
    499 U.S. 467 (1991) ................................................................................. 5

*Miller v. French*,
    530 U.S. 327 (2000) ............................................................................... 10

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) ................................................................................. 7

*Mistretta v. United States*,
    488 U.S. 361 (1989) ............................................................................... 10

*Napue v. Illinois*,
    360 U.S. 264 (1959) ............................................................................... 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ............................................................................... 12

*Peacemaker Diagnostic Clinic of Am., Inc. v. Instro-Medix*,
    725 F.2d 537 (9th Cir. 1984) ................................................................. 18

*Peretz v. United States*,
    501 U.S. 923 (1991) ......................................................................... 17, 22

*Plaut v. Spendthrift Farm, Inc.*,
    514 U.S. 211 (1995) ......................................................................... 18, 21

*Porter v. McCollum*,
    558 U.S. 30 (2009) ................................................................................. 6

*Prigg v. Pennsylvania*,
    41 U.S. 539 (1842) ............................................................................... 3, 4

*Rice v. Collins*,
    546 U.S. 333 (2006) ................................................................................. 7

*Rosales-Mireles v. United States*,
    585 U.S. 129 (2018) ............................................................................... 19

*Rose v. Lundy*,
    455 U.S. 509 (1982) ............................................................................... 13

*Ex parte Royall*,
    117 U.S. 241 (1886) ................................................................................... 2, 3, 12

*Sandoval Mendoza v. Lumpkin*,
    81 F.4th 461 (5th Cir. 2023) ................................................................................ 8

*SEC v. Jarkesy*,
    603 U.S. 109 (2024) .......................................................................... 1, 13, 16, 22

*Shoop v. Twyford*,
    596 U.S. 811 (2022) ................................................................................... 5

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021)................................................... 23, 24, 25

*State v. Stephens*,
    664 S.W.3d 293 (Tex. Crim. App. 2022)................................................... 24

*Stern v. Marshall*,
    564 U.S. 462 (2011) ................................................................................... 8, 13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023) ................................................................................... 2

*Tennessee v. Davis*,
    100 U.S. 257 (1879) ................................................................................... 18

*Timbs v. Indiana*,
    586 U.S. 146 (2019) ................................................................................... 4

*United States v. Hatten*,
    532 U.S. 557 (2001) ................................................................................... 22

*Valdez v. Cockrell*,
    274 F.3d 941 (5th Cir. 2001) ................................................................................... 8

*Virginia v. LeBlanc*,
    582 U.S. 91 (2017) ................................................................................... 7

*Wainwright v. Sykes*,
    433 U.S. 72 (1977) ................................................................................... 12

*Wellness Intern. Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) ................................................................................... 2, 1, 9

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ............................................................... 12

*Williams v. Taylor,*
    529 U.S. 362 (2000) ............................................................ 6, 11

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 433 (2015) .......................................................... 10, 11

*Wood v. Allen,*
    558 U.S. 290 (2010) ........................................................ 5, 7, 20

*Woodford v. Garceau,*
    538 U.S. 202 (2003) ................................................................. 5

*Woodford v. Viscotti,*
    537 U.S. 19 (2003) .................................................................. 7

*Woods v. Donald,*
    575 U.S. 312 (2015) ................................................................ 5

*Wright v. West,*
    505 U.S. 277 (1992) ................................................................ 4

*Ex parte Yerger,*
    75 U.S. (8 Wall.) 85 (1868) .................................................. 2, 3

**Constitutional Provisions**

Tex. Const. Article V, §§ 1-a, 2 .................................................. 23

U.S. Const. amend. V ................................................................ 25

U.S. Const. amend. XIV ................................................ 4, 10, 12, 25

U.S. Const. art. III .......................................................... *passim*

U.S. Const. art. III, § 1 ........................................................... 22

U.S. Const. art. III, § 2 ........................................................ 8, 13

U.S. Const. art. VI, cl. 2 ........................................................... 1

**Statutes**

28 U.S.C. § 636(b)(1)(A) .......................................................... 17

28 U.S.C. § 636(b)(1)(C) .......................................................... 17

28 U.S.C. § 2254(a) ............................................................................... 21

28 U.S.C. § 2254(d) ...................................................................... *passim*

28 U.S.C. § 2254(d)(1) ................................................................. *passim*

28 U.S.C. § 2254(d)(2) .......................................................... 7, 20, 21

28 U.S.C. § 2254(e) ...................................................................... *passim*

28 U.S.C. § 2254(e)(1) .................................................... 7, 15, 20, 21

Antiterrorism and Effective Death Penalty Act of 1996 ................... *passim*

The Federal Magistrates Act of 1968 ......................................... 17

Habeas Corpus Act of 1867 ............................................... 3, 4, 9



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE CADE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:17-CV-3396-G-BT |
| | § | |
| ERIC GUERRERO, Director, Texas | § | |
| Department of Criminal Justice, Cor- | § | |
| rectional Institutions Division, | § | CAPITAL HABEAS CASE |
| | § | |
| Respondent. | § | |

**BRIEF IN SUPPORT OF MOTION TO DECLARE UNCONSTITUTIONAL
THE APPLICATION OF SECTIONS 2254(d) AND (e) OF TITLE 28**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Antiterrorism and Effective Death Penalty Act's (AEDPA) amendments to

28 U.S.C. §§ 2254(d) and (e), as interpreted and applied to this case, violate the Su-

premacy Clause, U.S. Const. art. VI, cl. 2, and Article III by delegating federal judicial

power to non-Article III courts and denying Cade his right to an Article III adjudica-

tion of the matter in controversy. *See Wellness Intern. Network v. Sharif*, 575 U.S.

665, 675-76 (2015). The enumeration of the right to Article III review "takes out of

the hands of government—even the Third Branch of Government—the power to de-

cide on a case-by-case basis whether the right is *really worth* insisting upon." *District

of Columbia v. Heller*, 554 U.S. 570, 634 (2008) (emphasis in original).

*SEC v. Jarkesy* held that legislation purporting to give executive agencies

power to adjudicate common-law rights and obligations was an unconstitutional del-

egation of judicial power to non-Article III entities. 603 U.S. 109, 127-34, 140 (2024).

The same principle prohibits Congress from subordinating the Judiciary's power to that of state-court judges whose office depends on partisan political elections.

*Loper Bright Enterprises v. Raimondo* overturned *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required that Article III courts defer to executive agencies' interpretations of ambiguous federal laws. 603 U.S. 369, 379-80, 412 (2024). *Chevron* violated "the unremarkable, yet elemental proposition … that courts decide legal questions by applying their own judgment." *Id.* at 391-92. Evidence proffered here shows that, as applied in this case, §§ 2254(d) and (e) go far beyond *Chevron* in requiring that Article III courts subordinate their judgment to non-Article III partisan political actors.

The cases and evidence discussed here undermine the sole Fifth Circuit decision rejecting an Article III challenge to § 2254(d)(1), *Cobb v. Thaler*, 682 F.3d 364, 373-77 (5th Cir. 2012).

## II.    THE CHALLENGED LAW AND ITS CONTROLLING INTERPRETATIONS

### A.    THE CONSTITUTIONAL FLOOR: THE HABEAS PRIVILEGE FOR STATE PRISONERS IN 1868

Cade demonstrated in his Reply, ECF No. 146 at 18-46 (ECF page numbers), that during the Second Founding,[1] Congress gave state prisoners the constitutional privilege of plenary federal habeas review of allegedly unconstitutional detention.[2]

---

[1] *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 230 (2023) (using this phrase in reference to Reconstruction).

[2] *See* Act of Feb. 5, 1867, 2nd Sess., ch. 28, §1, 14 Stat. 385, 385-86; *Slaughter-House Cases*, 83 U.S. 36, 69 (1872) (citing *In re Turner*, 24 F. Cas. 337 (C.C.D. Md. 1867)); *see also Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 101-02 (1868); *Ex parte Royall*, 117 U.S. 241, 247-48 (1886); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

That account of the writ's original public meaning responds to the erroneous account contained in *Cobb*, 682 F.3d at 375-76. Cade incorporates those Reply arguments for purposes of this Motion.

Legal and other sources show that "the right … to claim the benefit of the writ of habeas corpus," *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823), is among the "rights of the citizen guaranteed by the Federal Constitution."[3] Congress passed the Habeas Corpus Act of 1867 (HCA) with the understanding that such legislation would define the habeas privilege protected by the Suspension Clause.[4] Antebellum and Reconstruction-era speeches and texts identified a reconstructed habeas corpus as a privilege to be guaranteed under the Constitution.[5]

---

128-29 (2020); *Lehman v. Lycoming Cnty. Child.'s Servs. Agency*, 458 U.S. 502, 518 n.3 (1982) (Blackmun, J., dissenting); *Griffin's Case*, 11 F. Cas. 7, 23-24 (C.C.D. Va. 1869) (Chase, C.J.); Anthony G. Amsterdam, *Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trial*, 113 U. Pa. L. Rev. 793, 886 (1965) (federal courts "viewed the 1867 statute as imperatively demanding federal discharge of state prisoners held for trial or after state trial-court conviction, notwithstanding the availability of still unexhausted state remedies") (cited in *State of Ga. v. Rachel*, 384 U.S. 780, 786 n.4 (1966), as "a remarkably original and comprehensive discussion of the issues").

[3] *Slaughter-House*, 83 U.S. at 79 (citing *Corfield*).

[4] *Yerger*, 75 U.S. at 101-02; *Royall*, 117 U.S. at 247-48; *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807).

[5] "[E]xamination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period after its enactment or ratification … is a critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605.

For antebellum sources *see*, *e.g.*, William Yates, *Rights of Colored Men* (1838), *quoted in* 1 Kurt Lash, *The Reconstruction Amendments, Essential Documents* 134-35 (Lash, *Essential Documents*); *Sommersett's Case*, 20 How. St. Tr. 1 (K.B. 1772) (reproduced in 1 Lash, *Essential Documents* 164); *Commonwealth v. Aves*, 35 Mass. 193, 196 (1836) (reproduced in 1 Lash, *Essential Documents* 211-16). *Prigg v. Pennsylvania*, 41 U.S. 539 (1842), put an end to States' use of habeas to free slaves who

The HCA was enacted in response to "the war white southerners waged on the[] freedom" of people recently emancipated and their political allies.[6] Its original purpose was thus "a matter of … public history": "It was to relieve persons from a deprivation of their liberty under State laws …."[7] That is, the public and Congress understood that placing independent federal tribunals between individuals and their constitutional rights and the States' enforcement of their penal laws was essential to new federalism borne of the Second Founding.

In the relevant context, federalism after the Second Founding meant that if state courts provided full, fair, and independent review of allegedly unconstitutional detention, federal courts might not intervene. But if federal courts were not satisfied with the state courts' process, they provided plenary review and enforced the Constitution by ordering immediate discharge of the detained person, state law notwithstanding.[8]

---

reached their territories. *Prigg,* in turn, enflamed the abolitionist movement. Liberty Party Platform of 1843 (reproduced in 1 Lash, *Essential Documents* 226).

For Reconstruction sources *see*, *e.g.*, David T. Hardy, *Original Popular Understanding of the Fourteenth Amendment as Reflected in the Print Media of 1866-1868*, 30 Whittier L. Rev. 695, 703-707 (2015) (on Black Codes as provocation for 14th Amendment); *id.* at 720 n.135 (on habeas as privilege of citizenship); Eric Foner, *Reconstruction: America's Unfinished Revolution, 1863-1877*, at 199-205, 277 (updated ed. 2002).

[6] Kidada E. Williams, *I Saw Death Coming: A History of Terror and Survival in the War Against Reconstruction* xxiv (2023); *Ex parte McCardle*, 73 U.S. 318, 322 (1867) (argument of Sen. Trumbull).

[7] *McCardle*, 73 U.S. at 322 (argument of Sen. Trumbull). *See also Timbs v. Indiana*, 586 U.S. 146, 153 (2019); *City of Chicago v. Morales*, 527 U.S. 41, 53 n.20 (1999) (plurality op.) (recounting this history of state abuse following the Civil War).

[8] *See Wright v. West*, 505 U.S. 277, 297-300 (1992) (O'Connor, J., concurring in judgment); *id.* at 299 ("absence of a full and fair hearing in the state courts

**B. SECTION 2254(D) & (E)'S TEXT AND ITS JUDICIAL INTERPRE-TATION**

**1. Section 2254(d)'s Relitigation Bar and Exceptions**

Cade does not bring a facial challenge to § 2254(d) which states that an "application … shall not be granted" unless the conditions set out in §§ (d)(1) or (d)(2) are satisfied. Cases are inconsistent as to whether the text means what it says and governs the decision whether to grant relief,[9] or whether it precludes "[f]ederal habeas review,"[10] or provides a standard *of* review.[11] Under the precedent Texas relies on here, Ans., ECF No. 132 at 20-22, § 2254(d) bars an Article III judge from deciding *de novo* and through independent, plenary review whether Cade is in custody in violation of the Constitution. Cases hold, for example, that "a federal court … must first take into account [AEDPA's] restrictions" before deciding whether to authorize discovery or an evidentiary hearing. Suppl. Ans., ECF No. 141.[12]

---

was *itself* the relevant violation of the Constitution" (emphasis in original)); *McCleskey v. Zant*, 499 U.S. 467, 478-79 (1991); Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441, 456-57 (1963); *see also Danforth v. Minnesota*, 552 U.S. 264, 272 n.6 (2008) (noting Bator's influence on development of habeas jurisprudence since mid-Twentieth Century).

[9] *E.g.*, *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) ("federal court may grant habeas *relief* only when" § 2254(d) is satisfied) (emphasis added).

[10] *E.g., id.* at 316; *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (describing § 2254(d) as limitation on "habeas corpus" generally as a near-complete "bar on federal-court relitigation of claims already rejected in state proceedings"); *Greene v. Fisher*, 565 U.S. 34, 39 (2011) ("relitigation bar").

[11] *E.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Wood v. Allen*, 558 U.S. 290, 297 (2010); *Knowles v. Mirzayance*, 556 U.S. 111, 114 (2009). The text conditions relief on the qualities of a state court's "adjudication of the claim" at issue § 2254(d), but cases sometimes treat the text as having "revis[ed] the standards for evaluating the merits of a habeas application." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

[12] *Citing Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (citing *Shinn v. Marinez Ramirez*, 596 U.S. 366, 389-90 (2022); *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

Section 2254(d) permits a federal habeas court to grant relief if any of four alternative conditions exists.[13] The first is whether the relevant claim was "adjudicated on the merits in State court proceedings."[14] If the state court did not adjudicate a claim or an element of it, federal court conducts review of that claim or element *de novo*.[15] Per judicial construction, Article III courts must presume this condition has been satisfied when a state court says it denied a claim or when it rejected an entire petition summarily and without explanation.[16]

The second and third preconditions for constitutional enforcement are in § 2254(d)(1), which permits relief if the state court's "decision … was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Again, by judicial interpretation, a state court decision is "contrary to … clearly established precedent" not merely because it applies an incorrect rule, it must "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court's] cases."[17]

The third alternative precondition, § 2254(d)(1)'s "unreasonable application" standard, is the most often discussed. By judicial construction, it is so "highly

---

[13] Each party to this case has assigned to the other the burden of proving one of these conditions or its absence.

[14] 28 U.S.C. § 2254(d); *Johnson v. (Tara) Williams*, 568 U.S. 289, 301-303 (2013).

[15] *E.g.*, *Porter v. McCollum*, 558 U.S. 30, 39 (2009).

[16] *(Tara) Williams*, 568 U.S. at 298-301.

[17] *E.g.*, *(Terry) Williams v. Taylor*, 529 U.S. 362, 405 (2000).

deferential,"[18] that "'even clear error will not suffice'" to permit relief on *de novo* review.[19] Where that standard applies, § 2254(d) purports to block an Article III court's exercise of independent judgment on what the Constitution says about the case at bar unless the Article III court determines that the state court committed an error so unreasonable as to lie "beyond any possibility for fairminded disagreement."[20]

The final precondition, codified in § 2254(d)(2), permits relief when a state court's merits decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding."[21] That, too, is a more onerous standard than the "clear error" standard applied on direct review.[22] It thus displaces an Article III court's independent fact-finding powers and "requires that [the federal court] accord the state … court substantial deference."[23]

### 2. Section 2254(e)(1)'s Due-Process Override

Section 2254(e)(1) requires that federal courts treat as actual facts the findings of state courts unless the petitioner presents clear and convincing evidence that the state court's findings are wrong. Whether or not § 2254(d)'s relitigation bar applies, § 2254(e)(1) requires that federal courts apply the Constitution to "facts" that are more likely than not to be unsupported by evidence, false, incorrect, or inaccurate. *See Wood*, 558 U.S. at 301. At least in the Fifth Circuit, § 2254(e)(1) requires deference

---

[18] *Woodford v. Viscotti*, 537 U.S. 19, 24 (2003) (per curiam) (quoting *Lindh*, 521 U.S. at 333 n.7).
[19] *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (quoting *Woods*, 575 U.S. at 316).
[20] *Richter*, 562 U.S. at 103.
[21] *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).
[22] *Rice v. Collins*, 546 U.S. 333, 338 (2006).
[23] *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).

regardless of "the quality of the process" the state court employed,[24] even where the petitioner asserts that the state court "failed to provide him with due process."[25]

### III.    GROUNDS FOR HOLDING §§ 2254(D) AND (E) UNCONSTITUTIONAL

#### A.    AEDPA PLAINLY IMPLICATES THE SEPARATION OF POWERS

##### 1.  The Judicial Power

Article III, § 2, of the Constitution states that the national "judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States ...." Whether the habeas privilege for state prisoners is a case arising under the Constitution, as Cade contends it is, or arising under the laws,[26] as habeas review of state criminal judgments indisputably is, the national judicial power "shall extend" to it.

Article III gives federal courts the power to decide "matters of common law and statute as well as constitutional law, issues of fact as well as issues of law."[27] That delegation is exclusive and the performance of this function is mandatory: "Article III ... assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies' ...."[28] Because only a judge who operates under Article III's strictures for independence—lifetime appointments, fixed compensation—can exercise

---

[24] *Valdez v. Cockrell*, 274 F.3d 941, 950-51 (5th Cir. 2001).

[25] *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 472 (5th Cir. 2023).

[26] "[O]nly the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Conty., Ga.*, 590 U.S. 644, 654 (2020).

[27] *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86-87 n.39 (1982) (plurality op.)).

[28] *Loper Bright v. Raimondo*, 603 U.S. 369, 384 (2024).

8

the judicial power, "entitlement to an Article III adjudicator is a personal right."[29] On any fair comparison between the judicial construction of AEDPA's provisions quoted *supra* and the quotations in this paragraph, Congress's amendments to §§ 2254(d) and (e) place explicit limits and controls on core Article III powers: determining the facts of a case, determining the law based on those facts, and resolving the case by way of an independent and effective adjudication.

Article III's exclusive grant of power to federal courts[30] to adjudicate federal claims reflects the founding generation's view that only the judiciary could safeguard the Constitution itself.[31] Exclusivity was necessary so that federal law would receive uniform application, to give "effectual controul [sic] in the whole over its parts."[32] Of particular importance here, the Framers knew the Constitution's limits on the powers of States would not be "scrupulously regarded without some effectual power in the government to restrain or correct the infractions of them."[33]

The American people extended those safeguards to protect individual rights from violation by the States when Congress enacted the HCA and created an

---

[29] *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 678 (2015) (internal quotation marks omitted).

[30] While the Supremacy Clause requires that state courts *follow* federal law, only Article III courts have the power to say what that law is.

[31] 3 Jonathan Elliot, *The Debates in the Several State Conventions on the Adoption of the Federal Constitution* 503 (1836) ("To what quarter will you look for protection from an infringement on the constitution, if you will not give the power to the judiciary?") (future Chief Justice John Marshall to the Virginia convention). *See generally* Anthony G. Amsterdam & James S. Liebman, Loper Bright *and the Great Writ*, 56 Colum. Hum. Rts. L. Rev. 54, 66-82 (2025).

[32] 1 The Records of the Federal Convention of 1787, at 167 (Max Farrand ed., 1911) (June 8, 1787) (James Wilson).

[33] *The Federalist* No. 80, at 475-76 (A. Hamilton) (C. Rossiter ed., 1961).

immediate remedy for detention in violation of the Constitution, and when, the following year, the State's completed the process of ratifying the Fourteenth Amendment.[34]

## 2. The Separation of Powers Doctrine

Stated in the negative, the Constitution's separation of powers "prohibits one branch from encroaching on the central prerogatives of another."[35] In the positive, it "requires that a branch not impair another in the performance of its constitutional duties."[36] "The structural principles secured by the separation of powers protect the individual as well" as each Branch's interests.[37] Because "the separation of powers is designed to preserve the liberty of all the people,"[38] the doctrine is vital to the Constitution's guarantee that no one lose his life or liberty without due process of law.[39]

The separation of powers requires that courts "strike down provisions of law that … undermine the authority and independence of one or another coordinate Branch."[40] As relevant here, the doctrine requires "vigilance against" any "provision of law [that] impermissibly threatens the institutional integrity of the Judicial Branch."[41] "The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government."[42] Because "the judiciary 'has no

---

[34] *See supra* n.5 and accompanying text.

[35] *Miller v. French*, 530 U.S. 327, 341 (2000).

[36] *Loving v. United States*, 517 U.S. 748, 757 (1996).

[37] *Bond v. United States*, 564 U.S. 211, 222 (2011).

[38] *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

[39] *See generally* Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672 (2012).

[40] *Mistretta v. United States*, 488 U.S. 361, 382 (1989).

[41] *Id.* at 383 (internal quotation marks and citation omitted).

[42] *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015).

influence over either the sword or the purse; ... neither force nor will but merely judgment,' ... The judiciary's authority ... depends in large measure on the public's willingness to respect and follow its decisions."[43]

### 3. Prolepsis

It is true that the provisions challenged here have been upheld by the Supreme Court, although on grounds distinct from those presented here. For example, in *(Terry) Williams*, the Majority neither agreed nor disagreed with the proposition that § 2254(d)(1) had to leave the Judicial Branch "independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States—to interpret federal law."[44] 529 U.S. at 378-79 (opinion of Stevens, J.).

For purposes of the separation of powers, the Supreme Court's embrace of the provisions challenged here is not dispositive. First, "the separation of powers does not depend on ... [whether] 'the encroached-upon branch approves the encroachment.'"[45] Second, since *(Terry) Williams*, the Court's application of § 2254(d) has constructed an ever-greater legislative restraint on adjudication. Third, the Court's separation-of-powers jurisprudence has moved in the opposite direction—towards reasserting the courts' constitutional role. The cases discussed in Part II of this brief illustrate the former trend. The cases discussed here—most decided after the § 2254(d) construction in *(Terry) Williams* and subsequent cases began—exemplify the latter.

---

[43] *Id.* at 445-46 (quoting *The Federalist* No. 78, at 465 (A. Hamilton) (C. Rossiter ed., 1961) (capitalization altered)).

[44] The majority opinion in *(Terry) Williams* did not mention Justice Stevens's arguments on judicial independence. *See* 529 U.S. at 399-413.

[45] *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 497 (2010) (quoting *New York v. United States*, 505 U.S. 144, 182 (1992)).

History matters here because it shows that the Framers and adopters of the habeas privilege at the time of the Second Founding codified a remedy that would be effective against schemes by the States to evade the strictures imposed by the Reconstruction Amendments. As applied, AEDPA does the opposite by impairing federal courts' power to adjudicate whether state action that implicates due process or a privilege or immunity of national citizenship violates the Fourteenth Amendment.

It also is true and relatively unimportant that AEDPA represents Congress catching up to and exceeding the Supreme Court's conceptions and goals of comity, finality, and post-Reconstruction federalism.[46] A super-majority of the Court now sees itself as faithful agents of the people's understanding as expressed in laws adopted during the Second Founding.[47] Thus, there are no Supreme Court precedents to overrule in deciding this motion and, as the Court itself has observed,

> the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution, for convenience and efficiency are not the primary objectives—or the hallmarks—of democratic government.[48]

---

[46] *See Wainwright v. Sykes*, 433 U.S. 72, 79-81 (1977) (describing Court's modifications of habeas law beginning with *Royall*); *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (describing AEDPA's limitation on second or successive applications as continuation of same judicial policy agenda).

[47] *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 736 (2022) (Gorsuch, J., concurring) (quoting Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B. U. L. Rev. 109, 169 (2010)); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 90 (2017) (unanimous decision); *accord Beras v. Johnson*, 978 F.3d 246, 254-55 (5th Cir. 2020) (Oldham, J., concurring).

[48] *Free Enter. Fund*, 561 U.S. at 499 (cleaned up); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012).

While Congress may modify the habeas law so that "state courts may become increasingly familiar with and hospitable toward federal constitutional issues,"[49] the Supreme Court recently held that the "Constitution prohibits Congress from 'withdraw[ing] from [federal] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law.'"[50] That separation-of-powers holding has heightened application to §§ 2254(d) and (e) because, unlike the Constitution's *implied* delegation of power over common-law claims, the Constitution *expressly* assigns to Article III judges—and only Article III judges—the ultimate power to decide "issues of fact as well as issues of law,"[51] in "all Cases, in Law and Equity, arising under this Constitution [and] the Laws of the United States." U.S. Const. Art. III, § 2.[52] As AEDPA is applied, and as Texas seeks to have it applied here, § 2254(d) removes from this Court's cognizance the question whether Cade is in custody in violation of the Constitution.

### B.   SECTIONS 2254(D) AND (E) ARE LEGISLATIVE ENCROACHMENTS UPON CORE JUDICIAL POWERS

#### 1.   Article III Courts Interpret and Apply Law to Facts.

Under § 2254(d)(1), Article III courts cannot perform their core function of saying what the law is by applying it to the facts before them. The Framers understood

---

[49] *Rose v. Lundy*, 455 U.S. 509, 519 (1982).

[50] *Jarkesy*, 603 U.S. at 127 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 58 U.S. (18 How.) 272, 284 (1856)).

[51] *Stern*, 564 U.S. at 484 (quoting *Northern Pipeline*, 458 U.S. at 86-87).

[52] *See Jarkesy*, 603 U.S. at 134 ("Even when an action originates in a newly fashioned regulatory scheme, what matters is the substance of the action, not where Congress has assigned it." (cleaned up)); *see also Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016).

that "'the proper and peculiar province of the [federal] courts'" is the power to state "the final 'interpretation of the laws'" in cases over which they have jurisdiction.[53] Although there is "no doubt" that "Congress … may not usurp a court's power to interpret and apply the law to the circumstances before it,"[54] § 2254(d)(1) divests Article III courts of that power in all but a tiny minority of cases that represent "extreme malfunctions in the state criminal justice systems."[55] In all other instances, Article III courts must defer to interpretations and applications of the Constitution made by non-Article III courts. That reallocation of judicial power to state courts contravenes the original public meaning of the federal judicial power at the times of the Founding and Second Founding.[56] *See* Parts II.A and III.A, *supra*.

As currently construed, AEDPA requires that Article III courts defer to clearly erroneous applications of the Constitution by non-Article III courts. *See* Part II.B.2, *supra*. In *Loper Bright*, the Supreme Court rejected the idea that there could be a zone of "permissible" but incorrect interpretations of federal statutes. 603 U.S. at 400. Under the Constitution's structure, "[i]t … makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive

---

[53] *Loper Bright*, 603 U.S. at 384-85 (quoting *The Federalist* No. 78 (A. Hamilton)).

[54] *Bank Markazi*, 578 U.S. at 225 (cleaned up).

[55] *Richter*, 562 U.S. at102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

[56] AEDPA's anomalous nature is illustrated by the fact that it is the only precedent "in the nation's … history" providing for "congressionally mandated Article-III-court deference to a non-Article-III actor's interpretation of the Constitution or any other law." Amsterdam & Liebman, *supra* note 27, at 62.

14

tools, concludes is best." *Ibid*. Speaking of "the business of statutory interpretation," the Court held, "if it is not the best, it is not permissible." *Ibid*.

AEDPA does not pass muster. While the text constrains the habeas remedy, the many cases quoted in Part II.B, *supra*, authoritatively construe that text to impose a precondition on independent, *de novo* review. Indeed, because § 2254(e)(1) requires deference to findings of fact that are likely to be false, the law requires that the Article III courts sometimes apply the Constitution to fictitious cases, not real ones. By requiring adjudicative deference to clearly erroneous constitutional decisions, AEDPA violates the rule that "Congress may not employ the courts in a way that forces them to become active participants in violating the Constitution."[57] While it might be argued that AEDPA's adjudicative deference makes federal courts merely passive participants in constitutional violations resulting in death, "Congress could not 'direct a court to be instrumental'" to an unconstitutional outcome.[58]

In at least two ways, §§ 2254(d) and (e) require that federal courts be instrumental in constitutional violations. First, as shown in Part II.B.3, *supra*, under controlling Fifth Circuit cases, §§ 2254(d) and (e) require that federal courts hold inviolable violations of a habeas petitioner's due process rights that occur during the consideration of Cade's constitutional claims.

---

[57] Amanda L. Tyler, *The Story of* Klein*: The Scope of Congress's Authority to Shape the Jurisdiction of the Federal Courts*, *in Federal Courts Stories* 87, 112 (Vicki C. Jackson & Judith Resnik eds., 2010), quoted with approval in *Bank Markazi*, 578 U.S. at 227.

[58] *Bank Markazi*, 578 U.S. at 227-228 (cleaned up) (quoting *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872)).

Second, § 2254(d)(1) undermines the institutional integrity and core functioning of federal courts far more than the precedent overturned in *Loper Bright* and the portion of the Dodd-Frank Act invalidated in *Jarkesy*. The judicial doctrine invalidated in *Loper Bright* infringed the courts' power and duty to find a statute's "single, best meaning," by requiring deference to interpretations by executive agencies. 603 U.S. at 400. The Dodd-Frank provision invalidated in *Jarkesy* violated the separation of powers because purported to delegate aspects of the judicial power to "entities outside Article III." 603 U.S. at 132 (quoting *Stern*, 564 U.S. at 484). But *Chevron* did not narrow judicial review of agency interpretations nearly as much as § 2254(d)(1). *See Loper Bright*, 603 U.S. at 410. Sections 2254(d) and (e) diminish the judicial power to a far greater extent by binding federal courts to clearly erroneous conclusions on how the Constitution applies to a given case, to adjudications predicated on clearly erroneous determinations of fact, and to unlawfully determined findings of fact.

AEDPA dictates outcomes that are impermissible in administrative law. While, under §§ 2254(d) and (e), an Article III court may *not* disturb an unconstitutional adjudication made by a State's criminal courts, an Article III court *must* set aside an agency action, conclusion, or finding that was reached in violation of an affected person's right to due process of law.[59]

---

[59] *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009); *Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999) (citing *Roelofs v. Sec'y of Air Force*, 628 F.2d 594, 599–601 (D.C. Cir. 1980)); *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 459 (5th Cir. 2021).

The Federal Magistrate's Act (FMA) codifies another relationship between Article III judges and non-Article III actors that is strongly analogous to the relationship between Article III courts and state courts that AEDPA codifies. In both AEDPA and FMA, Congress delegated judicial functions—fact-finding and application of the law to the facts—to non-Article III judges for purposes of considering issues in the first instance. FMA survived Article III challenges because, when a magistrate judge conducts a hearing or makes preliminary rulings, "the entire process takes place under the district court's total control and jurisdiction."[60] That control meant "there [wa]s no danger that use of the magistrate involve[d] a congressional attempt to transfer jurisdiction to non-Article III tribunals for the purpose of emasculating constitutional courts,"[61] as AEDPA does.

FMA's *ex post* review requires *de novo* consideration by an Article III judge of *all* legal rulings for which an affected party seeks review, 28 U.S.C. §§ 636(b)(1)(A) and (C), and permits the Article III judge to vacate "clearly erroneous" findings of fact related to non-dispositive matters, § 636(b)(1)(A), and plenary review of all dispositive matters, § 636(b)(1)(C). If the Article III judge believes the record is not fully developed, she may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Ibid.*

AEDPA—under the judicial constructions Texas relies on here—eschews *all* those Article III powers: there is no Article III supervision of the fact-finding process;

---

[60] *Peretz v. United States*, 501 U.S. 923, 937 (1991) (cleaned up).
[61] *Ibid.* (cleaned up).

federal courts must adopt and apply clearly erroneous findings of fact; federal courts may not conduct review *de novo* of legal conclusions and instead must defer to clearly erroneous applications of clearly established constitutional rules. AEDPA leaves federal courts toothless,[62] and ethically and institutionally compromised. *See* Part III.C, *infra*.

### 2. Article III Courts Create Uniform Interpretations of Constitutional Provisions

A core function of the federal Judiciary is securing uniformity in constitutional meaning. As the Court said in *Davis*, *supra*, "If, whenever and wherever a case arises under the Constitution … the national government cannot take control of it … its judicial power is, at least, temporarily silenced, instead of being at all times supreme." 100 U.S. at 266. And as then-Judge Kennedy put it, "If the essential, constitutional role of the judiciary is to be maintained, there must be both the appearance and the reality of control by Article III judges over the interpretation, declaration, and *application* of federal law." *Peacemaker Diagnostic Clinic of Am., Inc. v. Instro-Medix*, 725 F.2d 537, 544 (9th Cir. 1984) (en banc), *cert. denied*, 469 U.S. 824 (1984) (emphasis added). Accordingly, Congress "cannot … indirectly control the *action* of the courts[] by requiring of them a construction of the law according to its own view[]." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (quoting Thomas Cooley,

---

[62] *See Tennessee v. Davis*, 100 U.S. 257, 266 (1879) ("The founders of the Constitution could never have intended to leave to the possibly varying decisions of the State courts what the laws of the government it established are, what rights they confer, and what protection shall be extended to those who execute them. If they did, where is the supremacy over those questions vested in the government by the Constitution?").

*Constitutional Limitations* 94-95 (1868)) (emphasis added). And yet, that is exactly what § 2254(d)(1) does; it requires that Article III courts exercise no independent judgment as to whether a given set of facts establishes a constitutional violation because Congress prefers the vast array of erroneous but not unreasonable applications of the Constitution that favor the States.

### C. SECTIONS 2254(D) AND (E) UNDERMINE THE INSTITUTIONAL INTEGRITY OF THE JUDICIAL BRANCH

"[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'"[63] In AEDPA, Congress undermined the legitimacy of Article III courts by directing them to apply a straightforward bias in favor of Congress's preferred party in habeas litigation—the State—on the basic question of what the facts are. In cases arising from Texas, § 2254(d)–(e) require deference to legal and factual determinations by a political branch of state government. *See* Part IV, *infra*.

Congress may confer on the courts only those "duties … as are properly judicial, and to be performed in a judicial manner." *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n.† (1792). As noted *supra*, deciding a case in a judicial manner requires independence, integrity, and judgment. The Framers recognized that even the most carefully worded laws "would be 'more or less obscure and equivocal, until their meaning' was settled 'by a series of particular discussions and adjudications.'"[64] The provisions

---

[63] *Rosales-Mireles v. United States*, 585 U.S. 129, 141 (2018) (quoting John Bowers & Paul H. Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–216 (2012)).

[64] *Loper Bright*, 603 U.S. at 385 (quoting *The Federalist* No. 37 (J. Madison)).

of the Bill of Rights were not worded to be determinate.[65] Thus, when judges carry

out their "duty … to say what the law is," they "apply the rule to particular cases,"

and in doing so "must *of necessity* expound and interpret that rule" to the facts of the

case.[66]

Sections 2254(d)(2) and (e)(1) require that Article III courts behave in a non-

judicial manner to the extent they require that federal courts reject constitutional

claims in deference to state-court determinations of fact that are likely to be false,

incorrect, inaccurate, or supported by weak or unreliable evidence or processes. *E.g.*,

*Wood*, 558 U.S. at 301. In addition to undermining the independence, integrity, and

judgment of Article III courts, those provisions unconstitutionally infringe upon the

federal courts' "duty … to make its own independent examination of the record when

federal constitutional deprivations are alleged," which is a "clear" part of their "sol-

emn responsibility for maintaining the Constitution inviolate." *Napue v. Illinois*, 360

U.S. 264, 271-72 (1959).

### D. SECTIONS 2254(D) AND (E) VIOLATE ARTICLE III'S CASE OR CONTROVERSY REQUIREMENT.

Article III expressly requires a real case and prohibits federal courts from ren-

dering "an opinion advising what the law would be upon a hypothetical state of facts."

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). By requiring that federal

courts decide constitutional claims on the basis of findings or determinations that are

---

[65] *See* Jud Campbell, *Determining Rights*, 138 Harv. L. Rev. 921, 929-47 (2025).
[66] *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added).

equally or more likely to be false—i.e. not facts at all—§§ 2254(d)(2) and (e)(1) violate Article III's prohibition on deciding cases on the basis of hypotheticals.

A statute requiring that an Article III court engage in a specific form of adjudication may fall within the "ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends." *Aetna Life*, 300 U.S. at 240.

The question most often posed by § 2254(d)(1), and therefore the grounds upon which thousands of habeas claims are disposed of, does not present Article III courts with "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Aetna*, 300 U.S. at 241. No one is in state custody due to the reasonableness of a state court's decision; hence, satisfying § 2254(d)(1) does not entitle a petitioner to relief. Federal habeas courts have jurisdiction to decide whether the petitioner is "in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution ...." 28 U.S.C. § 2254(a) (emphasis added). Therefore, when a federal court denies a claim based on § 2254(d)(1), the court is answering a question that neither admits of specific relief nor is conclusive of the concrete case or controversy that gives the court its jurisdiction. Because the Judicial power under Article III is the power "to render dispositive judgments," *Plaut*, 514 U.S. at 219 (quoting Frank H. Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905, 926 (1990)), on concrete cases, a judgment that rests

21

entirely on whether an antecedent state-court decision was reasonable fails to satisfy Article III.

IV. **THE CONSTITUTION PRECLUDES THE APPLICATION OF SECTIONS 2254(D) AND (E) TO CASES ARISING FROM TEXAS STATE COURTS**

"[T]he Framers crafted the Constitution to ensure that federal judges could exercise judgment free from the influence of the political branches." *Loper Bright*, 603 U.S. at 403. Under the Constitution's design, Cade has a "personal right to an Article III adjudicat[ion]." *Peretz*, 501 U.S. at 929 n.6. But when applied to cases arising from Texas, §§ 2254(d) and (e) requires more deference to non-Article III political actors than did the doctrine invalidated in *Loper Bright*.[67]

The Framers ensured judicial independence through Article III's "Compensation Clause, along with the Clause securing federal judges appointments 'during good Behavior,' U.S. Const., Art. III, § 1—the practical equivalent of life tenure." *United States v. Hatten*, 532 U.S. 557, 567 (2001). The Framers' insistence that the Nation's judicial power be wielded only by judges with fixed compensation and life tenure

> was informed by firsthand experience of the harmful consequences brought about when a King of England "made Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries." The Declaration of Independence ¶ 11. And Hamilton knew that "*a power over a man's subsistence amounts to a power over his will.*" The Federalist No. 79, at 472.

*Id.* at 568 (emphasis in decision). Even if the judicial constructions of §§ 2254(d) and (e) are constitutional notwithstanding the points and authorities cited in Part III,

---

[67] Cade need not and does not argue that judicial elections are bad or unconstitutional or that the Constitution requires that a State adopt a particular method for selecting its judges. Those issues are irrelevant to the constitutional question raised by *Loper Bright* and *Jarkesy*.

*supra*, they cannot be applied to criminal cases arising from Texas because Texas has chosen to make its criminal law judges partisan political officials.

Texas is one of only seven States in which all criminal court judges gain and hold their seats through a partisan political process, meaning candidates for judicial office run as members of a political party and can face primary challenges.[68] Six of those States use the death penalty or have it on the books.

The political nature of Texas judges, and their susceptibility to influence from other politicians in the State, involves more than participation in partisan electoral politics. *See* Tex. Const. art. V, §§ 1-a, 2. Recent events illustrate the role of partisan politics in the selection of Texas criminal-court judges. In 2024, the State's Attorney General, a member of the executive branch, and counsel to Respondent in this case, unseated three judges on the Texas Court of Criminal Appeals (TCCA). In December 2021, the TCCA held that the Attorney General did not have the power to pursue cases of voter fraud unilaterally because the Texas Constitution and laws gave that power to local district attorneys. *State v. Stephens*, 663 S.W.3d 45, 47 (Tex. Crim. App. 2021). That decision angered the Texas Attorney General and his supporters, who "made clear he would be going after the Republican judges over their … ruling"

---

[68] *See generally* Brennan Ctr. for Justice, Judicial Selection: An Interactive Map (last updated Aug. 20, 2024), https://www.brennancenter.org/judicial-selection-map. Voters in seven States choose criminal-court judges through partisan elections: Alabama, Illinois, Louisiana, North Carolina, Ohio, Pennsylvania, and Texas. Only Alabama, Louisiana, North Carolina, Ohio, and Texas require that judges win partisan elections to remain on the bench. Illinois and Pennsylvania hold nonpartisan retention elections when a judge seeks an additional term in office. In those elections, the judge does not face the possibility of a party primary or an opponent in the general election. Voters simply vote yes or no on the judge's retention.

in *Stephens*.[69] The Attorney General's allies "started a new political action committee, Texans for Responsible Judges" to unseat three judges from the eight-judge majority that had ruled against Paxton. *Ibid*. The politicos openly demanded ideological judging:

> "Despite Texas' reputation for conservative leadership, the Court of Criminal Appeals remains plagued by judges who've abandoned their conservative roots," the PAC's executive director, Sam Vrana, said in a statement. "Their decision to strip the Texas Attorney General of the power to prosecute voter fraud has left Texas undefended against liberal district attorneys." *Ibid*.

The effort to ensure ideological purity and party loyalty on the Court of Criminal Appeals was successful.

> [I]n media appearances and primary advertisements, Paxton painted the three incumbents as rogue Republicans who stripped the attorney general's power to go after voter fraud — a political topic dear to the modern GOP in light of … President Donald Trump's false claims of election interference.[70]

As a result of these highly charged efforts, all three of the judges targeted by Paxton and his allies lost to primary challengers in March 2024. *Ibid*.

A fourth member of the *Stephens* majority, Judge David Newell, announced in January 2025 that he would not seek re-election at the end of his second term.[71] Judge

---

[69] Patrick Svitek, "Three court of criminal appeal judges up for reelection targeted by Ken Paxton's political revenge machine," *Tex. Tribune* (Dec. 13, 2023), https://www.texastribune.org/2023/12/13/ken-paxton-court-of-criminal-appeal-primary-republicans/; *State v. Stephens*, 664 S.W.3d 293, 293 (Tex. Crim. App. 2022) (Walker, J., concurring in denial of Attorney General's petition for rehearing).

[70] William Melhado, "Ken Paxton successfully ousts three Republican criminal appeal court judges," *Tex. Tribune* (Mar. 6, 2024), https://www.texastribune.org/2024/03/05/texas-court-of-criminal-appeals-republican-primary/.

[71] Bayliss Wagner, "Why Texas Court of Criminal Appeals Judge David Newell won't seek reelection in 2026," *Aus. Am.-Statesman* (Jan. 17, 2025),

Newell explained that he had "seen the judicial system change 'completely' … and that he believes someone else may better 'fit this moment in the life of the court and of the law.'" *Ibid.*

Of course, Texas remains free to structure its judiciary in any way it sees fit. But the Supremacy Clause, the Due Process of Law Clauses of the Fifth and Fourteenth Amendments, and Article III preclude a federal statute that requires Article III judges, when presented with claims arising under the Constitution and laws of the United States, to defer to the factual findings and legal rulings of state-court judges who will lose their seats if they impair the ability of politicians to gin up outrage with incendiary, unprovable claims.[72]

## V.    CONCLUSION

For the foregoing reasons, Cade requests this Court consider this Motion after it decides to lift the current stay, hold a hearing on this motion, and upon direct consideration of the arguments presented here and at the hearing, hold that 28 U.S.C. §§ 2254(d) and (e) violate Article III, the Supremacy Clause, and the separation of powers and therefore cannot be applied in this case.

///

///

///

---

https://www.statesman.com/story/news/politics/state/2025/01/17/david-newell-texas-court-of-criminal-appeals-wont-seek-reelection/77775605007/.

[72] *See Bank Markazi*, 578 U.S. at 227-28 & n.19 (Congress can neither change constitutional standards nor require federal courts to act as though unconstitutional standards apply).

DATED: July 23, 2025

Respectfully submitted,

MAUREEN FRANCO
FEDERAL PUBLIC DEFENDER

/s/ Tivon Schardl
TIVON SCHARL
Chief, Capital Habeas Unit
SBOT #24127495
Federal Defender Office
919 Congress, Suite 950
Austin, Texas 78701
737-207-3008 (tel.)
512-499-1584 (fax)

/s/ Joseph J. Perkovich
JOSEPH J. PERKOVICH
Co-Counsel for Petitioner
Phillips Black, Inc.
PO Box 2171
New York, NY 10008
(212) 400-1660 (tel.)
j.perkovich@phillipsblack.org

Attorneys for Petitioner Tyrone Cade

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of July 2025, I electronically filed the foregoing Petitioner's Motion to Declare 28 U.S.C. §§ 2254(d) and (e) Unconstitutional As Applied to This Case with the Clerk of Court using the CM/ECF system which will affect service on all counsel of record.

*/s/ Tivon Schardl*
Tivon Schardl

27