UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION



| | | |
|---|---|---|
| TYRONE CADE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CAUSE NO. 3:17-CV-3396-G-BT |
| | § | |
| ERIC GUERRERO, Director, Texas | § | |
| Department of Criminal Justice, Cor- | § | |
| rectional Institutions Division, | § | CAPITAL HABEAS CASE |
| | § | |
| Respondent. | § | |

**MOTION TO DECLARE VOID 28 U.S.C. §§ 2254(D) & (E)(1) AS TEXAS SEEKS TO HAVE THEM APPLIED TO THIS CASE AND BRIEF IN SUPPORT**

TO THE HONORABLE A. JOE FISH, SENIOR UNITED STATES DISTRICT JUDGE:

Petitioner Tyrone Cade, by and through undersigned counsel, moves the Court to declare void 28 U.S.C. §§ 2254(d) and (e)(1) as Texas seeks to have them applied to this case. Texas relies on a construction of those provisions that Congress had no power to write into law. Where the Constitution calls upon Congress to make the benefits of habeas corpus available, Texas says §§ 2254(d) and (e) make those benefits illusory. Where the Constitution denies Congress a police power in the States and prohibits it from discriminating between States, Texas relies on a construction of §§ 2254(d) and (e) that (supposedly) promotes the penological interests of States using the death penalty at the expense of the Constitution's uniform and consistent application throughout the Nation. Texas asserts that the challenged provisions'

1

construction is justified by policies of comity, finality, and federalism, but the Constitution contains no enumerated power authorizing Congress to execute its policies through the Judicial Branch, especially on terms that bestow more benefits on some States than others.

This Motion is based on the files and records in this case and the attached brief. Mr. Cade requests a hearing and direct Article III consideration of the grounds and contentions raised in support of this Motion. *See Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 675-76 (2015).

On July 21, 2025, counsel for Mr. Cade emailed counsel for Texas, Assistant Attorney General Ali Nasser (*see* ECF No. 147), to initiate a discussion of this Motion. Mr. Nasser authorized Mr. Cade to inform the Court that the State opposes this Motion.

DATED:  July 23, 2025                    Respectfully submitted,

MAUREEN FRANCO                         */s/ Joseph J. Perkovich*
FEDERAL PUBLIC DEFENDER                 JOSEPH J. PERKOVICH
                                        Co-Counsel for Petitioner
 */s/Tivon Schardl*                      Phillips Black, Inc.
Chief, Capital Habeas Unit              PO Box 2171
SBOT No. 24127495                       New York, NY 10008
Federal Defender Office                 (212) 400-1660 (tel.)
919 Congress, Suite 950                 j.perkovich@phillipsblack.org
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)                      Attorneys for Petitioner Tyrone Cade

## TABLE OF CONTENTS

MOTION ....................................................................................................... 1

TABLE OF AUTHORITIES ...................................................................... ii

I.    Texas's Application of §§ 2254(d) and (e)(1) ...................................... 1

II.   Congress Lacked the Power to Enact AEDPA's Amendments to 28
      U.S.C. § 2254(d)–(e) ............................................................................ 2

      A.    Congress's Amendments to  28 U.S.C. § 2254(d)–(e) Were Not
            "Necessary." .................................................................................. 4

            1.    The United States Already Had a Habeas Privilege for
                  State Prisoners ...................................................................... 4

            2.    AEDPA Purports to Decrease the Quality and Quantity
                  of State Prisoners' Constitutional Privilege ......................... 6

      B.    Congress Has No Enumerated Power to Pursue AEDPA's Goals .......... 8

            1.    Congress Has No Power to Promote States' Use of the
                  Death Penalty ......................................................................... 8

            2.    Shrinking the Habeas Privilege for All State Prisoners to
                  Promote the Death Penalty in Some States Violates the
                  Equal Sovereignty Principle ................................................ 11

      C.    AEDPA Contravenes Congress's Responsibility Under Section
            5 of the Fourteenth Amendment. ....................................... 13

III.  Conclusion ....................................................................................... 18

CERTIFICATE OF SERVICE ................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Barefoot v. Estelle,*
  463 U.S. 880 (1983) ......................................................................... 12

*Bd. of Trs. of Univ. of Ala. v. Garrett,*
  531 U.S. 356 (2001) .................................................................. 15, 17

*Ex parte Bollman,*
  8 U.S. (4 Cranch) 75 (1807) ................................................. 2, 3, 4, 8

*Brumfield v. Cain,*
  576 U.S. 305 (2015) .......................................................................... 7

*Calderon v. Tompson,*
  523 U.S. 538 (1998) ................................................................. 10, 16

*City of Boerne v. Flores,*
  521 U.S. 507 (2000) ................................................................. 16, 17

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) ........................................................................... 5

*Commonwealth v. Aves,*
  35 Mass. 193 (1836) ......................................................................... 4

*Corfield v. Coryell,*
  6 F. Cas. 546 (C.C.E.D. Pa. 1823) ................................................... 5

*Dep't of Homeland Sec. v. Thuraissigiam,*
  591 U.S. 103 (2020) ......................................................................... 5

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ................................................................... 4, 17

*Glossip v. Oklahoma,*
  145 S. Ct. 612 (2025) ..................................................................... 17

*In re Griffin,*
  11 F. Cas. 7 (C.C.D. Va. 1869) .................................................. 3, 5, 6

*Harrington v. Richter,*
  562 U.S. 86 (2011) ...................................................................*passim*

*Jimenez v. Quarterman,*
    555 U.S. 113 (2009) ............................................................ 13

*Jones v. Cunningham,*
    371 U.S. 236 (1963) .................................................... 2, 3, 9

*Kimel v. Fla. Bd. of Regents,*
    528 U.S. 62 (2000) ....................................................... 15, 17

*Knowles v. Mirzayance,*
    556 U.S. 111 (2009) ............................................................ 1

*Lockyer v. Andrade,*
    538 U.S. 63 (2003) ............................................................ 16

*Loper Bright v. Raimondo,*
    603 U.S. 369 (2024) .................................................... 13, 15

*Maleng v. Cook,*
    490 U.S. 488 (1989) ............................................................ 9

*Ex parte McCardle,*
    73 U.S. 318 (1867) ............................................................ 5

*McCleskey v. Zant,*
    499 U.S. 467 (1991) .......................................................... 10

*McCulloch v. Maryland,*
    17 U.S. 316 (1819) ....................................................... 3, 8

*McFarland v. Scott,*
    512 U.S. 849 (1994) .......................................................... 12

*McNally v. Hill,*
    293 U.S. 131 (1934) ............................................................ 9

*Miller-El v. Cockrell,*
    537 U.S. 322 (2003) ............................................................ 7

*Prigg v. Pennsylvania,*
    41 U.S. 539 (1842) ............................................................ 4

*Rice v. Collins,*
    546 U.S. 333 (2006) ............................................................ 7

*Ex parte Royall,*
    117 U.S. 241 (1886) ....................................................... 4, 5

*Shelby County, Ala. v. Holder,*
    570 U.S. 529 (2013) ......................................................................... 11, 12, 13, 15

*Shinn v. Ramirez,*
    596 U.S. 366 (2022) ......................................................................... 14

*Slaughterhouse Cases,*
    83 U.S. 36 (1872) ......................................................................... 5, 14

*South Carolina v. Katzenbach,*
    383 U.S. 301 (1966) ......................................................................... 15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College,*
    600 U.S. 181 (2023) ......................................................................... 4

*Teague v. Lane,*
    489 U.S. 288 (1989) ......................................................................... 9, 10

*Timbs v. Indiana,*
    586 U.S. 146 (2019) ......................................................................... 5

*United States v. Comstock,*
    560 U.S. 126 (2010) ......................................................................... 3

*United States v. Connelly,*
    117 F.4th 269 (5th Cir. 2024) ......................................................................... 17

*United States v. Morrison,*
    529 U.S. 598 (2000) ......................................................................... 2, 10

*Virginia v. LeBlanc,*
    582 U.S. 91 (2017) ......................................................................... 7

*Wellness Intern. Network, Ltd. v. Sharif,*
    575 U.S. 665 (2015) ......................................................................... 2

*Williams v. Taylor,*
    529 U.S. 362 (2000) ......................................................................... 2

*White v. Woodall,*
    572 U.S. 415 (2014) ......................................................................... 7

*Woodford v. Garceau,*
    538 U.S. 202 (2003) ......................................................................... 8, 10, 13

*Woodford v. Viscotti*,
    537 U.S. 19 (2003) ................................................................... 7

*Ex parte Yerger*,
    75 U.S. (8 Wall.) 85 (1868) .......................................... 2, 4, 5, 6

*Younger v. Harris*,
    401 U.S. 37 (1971) ................................................................. 14

**Constitutional Provisions**

U.S. Const. amend. XIII ............................................................. 14

U.S. Const. amend. XIV .......................................................*passim*

U.S. Const. art. I, § 8 .................................................................. 17

U.S. Const. Article I, § 8, cl. 9 ..................................................... 3

U.S. Const. Article I, § 8, cl. 18 ................................................... 3

U.S. Const. art. I, § 9, cl. 2.......................................................... 2

**Statutes**

28 U.S.C. § 2244(d) ................................................................... 13

28 U.S.C. § 2254 .......................................................................... 9

28 U.S.C. § 2254(a) ...................................................................... 9

28 U.S.C. § 2254(d) ..............................................................*passim*

28 U.S.C. § 2254(d)(1) ...................................................... 1, 6, 16

28 U.S.C. § 2254(d)(2) ................................................................. 7

28 U.S.C. § 2254(e).............................................................*passim*

28 U.S.C. § 2254(e)(1) ........................................................*passim*

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)...................*passim*

Civil Rights Act of 1866 ............................................................. 14

Habeas Corpus Act of 1867 ............................................. 4, 5, 8, 14

Judiciary Act of 1789 ............................................................... 2, 8



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| TYRONE CADE, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | CAUSE NO. 3:17-CV-3396-G-BT |
| § | |
| § | |
| ERIC GUERRERO, Director, Texas § | |
| Department of Criminal Justice, Cor- § | CAPITAL HABEAS CASE |
| rectional Institutions Division, § | |
| § | |
| Respondent. § | |

**BRIEF IN SUPPORT OF MOTION TO DECLARE VOID 28 U.S.C. §§ 2254(d) & (e)(1) AS TEXAS SEEKS TO HAVE THEM APPLIED TO THIS CASE**

## I.    TEXAS'S APPLICATION OF §§ 2254(D) AND (E)(1)

The provisions at issue here were amended into law by the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA). Texas relies on AEDPA's amendments

to § 2254(d)(1), in particular its "unreasonable application" prong being applied as "a

highly deferential standard of review for evaluating state court rulings …." Ans. (ECF

No. 132) at 20-21 (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam)). In

Texas's operative pleading, § 2254(d)(1) alters the way the Constitution itself applies

in this case. *Id*. at 50 (relying on *Harrington v. Richter*, 562 U.S. 86, 105 (2011) and

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). That construction was not inevita-

ble, and Texas certainly did not have to rely on it. At the time the Supreme Court

first interpreted § 2254(d)(1), eight Circuits had reached divergent conclusions as to

its meaning.[1] Justice Stevens, joined by Justices Souter, Ginsburg, and Breyer, noting "that the word 'deference' does not appear in the text of the statute itself," would have given the provision a different construction. *(Terry) Williams v. Taylor*, 529 U.S. 362, 386 (2000). But that is the operative construction of § 2254(d) put forward for this case, so the question is whether Congress had the power to enact such a law. It did not.

## II. CONGRESS LACKED THE POWER TO ENACT AEDPA'S AMENDMENTS TO 28 U.S.C. § 2254(D)–(E)

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). By implication, the Suspension Clause, art. I, § 9, cl. 2, calls for Congress to "implement[] the constitutional command that the writ of habeas corpus be made available." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963). The Supreme Court found that the First Congress, when it provided for habeas corpus in the Judiciary Act of September 24, 1789, "must have felt, with peculiar force, the obligation of providing efficient means by which this great constitutional privilege should receive life and activity." *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807) (Marshall, C.J.). From the First Founding to the Second Founding "the general spirit and genius of our institutions has tended to the widening of and enlarging of the habeas corpus jurisdiction of the courts and judges of the United States." *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 102 (1868). The "presumption that the people in the exercise of that power [to amend],

---

[1] 2 Randy A. Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 32.3 (Lexis 2024).

seek to confirm and improve, rather than to weaken and impair the general spirit of the constitution," *Griffin's Case*, 11 F. Cas. 7, 26 (C.C.D. Va. 1869) (Chase, C.J.), continued to obtain through most of the twentieth century, until AEDPA.

While implied by the Suspension Clause, laws affecting habeas corpus may also be enacted under Congress' power to "constitute Tribunals inferior to the supreme Court," U.S. Const. art. I, § 8, cl. 9, and the power to enact laws "necessary and proper for carrying into Execution" the provisions of the Constitution, *see* U.S. Const. art. I, § 8, cl. 18. That latter, catch-all power is not unlimited: the end Congress seeks to achieve must be "legitimate," i.e. "within the scope of the constitution"; the means are "appropriate" if "plainly adapted to that end"; and the means must be "consistent with the letter and spirit of the constitution." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819); *United States v. Comstock*, 560 U.S. 126, 133-35 (2010). Congress may thus define the writ "by any statute, compatible with the [C]onstitution of the United States." *Bollman*, 8 U.S. at 94.

AEDPA, as construed by the Supreme Court, is incompatible with the Constitution. Unlike the habeas statutes at issue in *Bollman* and *Jones v. Cunningham*, 371 U.S. 236, 238 (1963), AEDPA's amendments to § 2254(d)–(e) do not make habeas available or give it life and activity. They buck the trend of the Nation's history and tradition by doing the opposite. They make habeas relief unavailable, lifeless, and inactive in all but the rarest cases. And they do so in service of the purported penological interests of the subset of States that retain the death penalty. But while proclaiming federalism, AEDPA offends the equal sovereignty of the states and offends

3

republicanism by violating the separation of powers and intruding on the core power of Article III. For these reasons, neither AEDPA's ends, nor its means, are consistent with the letter or spirit of the Constitution.

### A.   CONGRESS'S AMENDMENTS TO  28 U.S.C. § 2254(D)–(E) WERE NOT "NECESSARY."

#### 1.  The United States Already Had a Habeas Privilege for State Prisoners

During the Second Founding,[2] on February 5, 1867, the Habeas Corpus Act ("HCA") created the habeas privilege for state prisoners. In both public understanding[3] and jurisprudence, that enactment would define the habeas privilege protected by the Suspension Clause.[4] Both established that "the right … to claim the benefit of

---

[2] *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 230 (2023) (using this term in reference to Reconstruction).

[3] "[E]xamination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period after its enactment or ratification … is a critical tool of constitutional interpretation." *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008).

For antebellum sources see, e.g., William Yates, *Rights of Colored Men* (1838), *quoted in* 1 Kurt Lash, *The Reconstruction Amendments, Essential Documents* 134 (Lash, *Essential Documents*); *Sommersett's Case*, 20 How. St. Tr. 1 (K.B. 1772) (reproduced in 1 Lash, *Essential Documents* 164); *Commonwealth v. Aves*, 35 Mass. 193, 196 (1836) (reproduced in 1 Lash, *Essential Documents* 211-16). The Supreme Court's decision in *Prigg v. Pennsylvania*, 41 U.S. 539 (1842), put an end to free States' use of habeas to free slaves who reached their territories. *Prigg,* in turn, enflamed the abolitionist movement. Liberty Party Platform of 1843 (reproduced in 1 Lash, *Essential Documents* 226).

For Reconstruction sources see, e.g., David T. Hardy, *Original Popular Understanding of the Fourteenth Amendment as Reflected in the Print Media of 1866-1868*, 30 Whittier L. Rev. 695, 703-707 (2015) (on Black Codes as provocation for the Fourteenth Amendment); *id.* at 720 n.135 (on habeas as privilege of citizenship); Eric Foner, *Reconstruction: America's Unfinished Revolution, 1863-1877*, at 199-205, 277 (updated ed. 2002).

[4] *Yerger*, 75 U.S. at 101-02; *Ex parte Royall*, 117 U.S. 241, 247-48 (1886); *Bollman*, 8 U.S. at 95.

the writ," *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823), was among the "rights of the citizen guaranteed by the Federal Constitution."[5]

The HCA was enacted in response to "the war white southerners waged on the[] freedom" of people recently emancipated and their political allies.[6] Its original purpose was thus "a matter of … public history":

> It was to relieve persons from a deprivation of their liberty under State laws … especially those who had formerly been slaves, and who, under color of vagrant and apprentice laws in some of the States, were being reduced to a bondage more intolerable than that from which they had been recently delivered.[7]

That is, the public and Congress understood that the HCA interposed independent federal tribunals between the constitutional rights of the individual on one side and the States' enforcement of their penal and employment laws on the other.

The HCA gave state prisoners the right to plenary, *de novo*, consideration of whether their custodial status was constitutional by an Article III judge and to immediate discharge if it was not.[8] In so doing, it demonstrated that "the general spirit

---

[5] *Slaughter-House Cases*, 83 U.S. 36, 79 (1872) (citing *Corfield*).

[6] Kidada E. Williams, *I Saw Death Coming: A History of Terror and Survival in the War Against Reconstruction* xxiv (2023); *Ex parte McCardle*, 73 U.S. 318, 322 (1867) (argument of Sen. Trumbull).

[7] *McCardle*, 73 U.S. at 322 (argument of Sen. Trumbull). *See also Timbs v. Indiana*, 586 U.S. 146, 153 (2019); *City of Chicago v. Morales*, 527 U.S. 41, 53 n.20 (1999) (plurality op.) (recounting this history of state abuse following the Civil War).

[8] *See* Act of Feb. 5, 1867, 2nd Sess., ch. 28, § 1, 14 Stat. 385, 385-86; *Slaughter-House*, 83 U.S. at 69 (citing *In re Turner*, 24 F. Cas. 337 (C.C.D. Md. 1867)); *see also Yerger*, 75 U.S. at 101-02; *Royall*, 117 U.S. at 247-48; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 128-29 (2020); *Lehman v. Lycoming Cnty. Child.'s Servs. Agency*, 458 U.S. 502, 518 n.3 (1982) (Blackmun, J., dissenting); *Griffin's Case*, 11 F. Cas. 7, 23 (C.C.D. Va. 1869) (Chase, C.J.); Anthony G. Amsterdam, *Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and*

and genius of our institutions" that Chief Justice Chase cited in *Yerger*, 75 U.S. at 102. "[I]t is in the light of it that we must determine the true meaning of the Constitution and the law …." *Ibid*. That is, after years of history and tradition informing a habeas privilege that included plenary Article III review for full and fair adjudication of constitutional claims—both as to facts and law—what necessitated the reversal?

## 2. AEDPA Purports to Decrease the Quality and Quantity of State Prisoners' Constitutional Privilege

Courts presume "that the people in the exercise of that power [to amend], seek to confirm and improve, rather than to weaken and impair the general spirit of the [C]onstitution." *Griffin's Case*, 11 F. Cas. at 26. Although judicial constructions contracted and expanded the scope of habeas review available for state prisoners before AEDPA, it remained plenary until April 24, 1996, when the President signed AEDPA into law.[9] As later construed by the Supreme Court, § 2254(d)–(e) erect a presumptive "bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(e)(1) dictates that federal courts must presume state court fact findings correct unless the petitioner demonstrates otherwise by clear and convincing evidence. Section 2254(d)(1) bars relief on

_____

*Habeas Corpus Jurisdiction to Abort State Court Trial*, 113 U. Pa. L. Rev. 793, 886 (1965) (observing that, in years after 1867 passage, lower federal courts "viewed the 1867 statute as imperatively demanding federal discharge of state prisoners held for trial or after state trial-court conviction, notwithstanding the availability of still unexhausted state remedies") (cited in *State of Ga. v. Rachel*, 384 U.S. 780, 786 n.4 (1966) as "a remarkably original and comprehensive discussion of the issues").

[9] *See* Lee Kovarsky, Response, *Ordinary Public Meaning & Habeas Power to Review State Convictions*, 173 U. Pa. L. Rev. Online 143, 146-56 (2025) (responding to Micah S. Quigley, *What is Habeas?*, 173 U. Pa. L. Rev. 453 (2025)).

a claim adjudicated on the merits in state court unless the federal court finds that the state court's ruling was either contrary to clearly established Supreme Court cases or involved an unreasonable application of the Court's cases.

Federal courts most often apply the latter, unreasonable application provision. That standard is so "highly deferential,"[10] that "even clear error will not suffice" to permit relief on *de novo* review.[11] Where that standard applies, § 2254(d) suspends an Article III court's exercise of independent judgment unless, and to the extent that, the federal court determines the state court committed an error so unreasonable as to lie "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, under this most-often applied standard, Americans can lose their liberty—and their lives—based on clearly erroneous applications of the Constitution.

Section 2254(d)(2) permits federal habeas relief where a state court merits determination is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is also more onerous than the "clear error" standard applied on direct review. *See Rice v. Collins*, 546 U.S. 333, 338 (2006). It thus displaces an Article III court's independent fact-finding powers and "requires that [the court] accord the state … court substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).

---

[10] *Woodford v. Viscotti*, 537 U.S. 19, 24 (2003) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

[11] *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)); *White v. Woodall*, 572 U.S. 415, 419 (2014).

These interpretations make AEDPA the antithesis of the HCA and the revolution that produced it.[12] The two laws are different in kind, not merely scope. In both the First Judiciary Act and the HCA, Congress made habeas review plenary and relief more readily available. AEDPA sought to radically limit the enforcement, on habeas review, of individual rights secured against state abuse by the Fourteenth Amendment, which was half-way to ratification when the HCA was enacted and was ratified one year after passage of the HCA. Under *Bollman*, *McCulloch*, and *Griffin*, AEDPA is presumptively incompatible with the spirit and letter of the Constitution.

Assuming *arguendo* that Congress had the power to diminish a constitutional privilege under *Bollman* and *McCulloch*, there remain the questions whether Congress's means and ends were constitutional. They were not.

**B.    CONGRESS HAS NO ENUMERATED POWER TO PURSUE AEDPA'S GOALS**

**1.  Congress Has No Power to Promote States' Use of the Death Penalty**

"Congress enacted AEDPA to reduce delays in the execution of state … criminal sentences, particularly in capital cases." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). In fact, AEDPA's amendments could *only* affect delays in the execution of

---

[12] *See* Cong. Globe, 41st Cong., 2nd Sess. 3608 (1870) (remarks of Sen. Carl Schurz) ("That is the result of th[is] great Constitutional revolution. What does this result signify? The war grew out of the systematic violation of individual rights by State authority. The war ended with the vindication of individual rights by the National power. The revolution found the rights of the individual at the mercy of the States; it rescued them from their arbitrary discretion, and placed them under the shield of National protection. It made the liberty and rights of every citizen in every State a matter of National concern. Out of a Republic of arbitrary local organizations it made a Republic of equal citizens . . . .").

death sentences. Long before AEDPA, the federal habeas remedy for state prisoners would lie only if the petitioner was "in custody pursuant to the judgment of a state court." 28 U.S.C. § 2254(a).[13] By 1995, the Supreme Court had "often stated [that] a criminal judgment necessarily includes the sentence imposed upon the defendant." *Teague v. Lane*, 489 U.S. 288, 314 n.2 (1989). Section 2254(a)'s "in custody" require-ment was regarded as jurisdictional, *Jones*, 371 U.S. at 238, and courts understood it to mean that the petitioner must "suffer[ some] *present* restraint from a conviction" at the time the application is filed. *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam) (emphasis added). Therefore, when AEDPA was enacted, all persons seeking habeas relief pursuant to § 2254 were suffering the pains of a criminal sentence im-posed by a state court; the only sentences that could be described as delayed due to federal habeas review were death sentences.[14]

As the phrase "effective death penalty" in AEDPA's title suggests, the amend-ments to § 2254(d)–(e) do not seek to reduce delays for the sake of celerity itself any

---

[13] *See McNally v. Hill*, 293 U.S. 131, 134, 137-39 (1934) (refusing writ for peti-tioner who attacked judgment on a count for which he was not yet serving sentence).

[14] Indeed, Congressional debates on habeas corpus reform recognized this fact and stressed the unique situation of capital litigants: "The inmate under capital sen-tence, whose guilt frequently is never in question, has every incentive to delay the proceedings that must take place before that sentence is carried out. Such an inmate is avoiding the punishment prescribed by the law of the State. In contrast, prisoners serving an ordinary term of years have every incentive to bring their claims to reso-lution as quickly as possible in order to gain relief. And they are serving their sen-tences while litigation takes place." Jud. Conf. of the U.S., Ad Hoc Comm. on Fed. Habeas Corpus in Capital Cases, Committee Report and Proposal 5 (Aug. 23, 1989) (Powell Comm. Rep.), *reprinted in Habeas Corpus Reform: Hearings Before the Comm. on the Judiciary on S. 88, S. 1757, & S. 1760*, 101st Cong. 7-30 (1989).

more than they reduce delays in the execution of non-capital sentences. The reduction in delay is a promotion of finality that serves the purpose of promoting an "effective death penalty" in the States that retain capital punishment.[15] Congress was responding to the Supreme Court's assertions that delays undermine the deterrent and retributive effects of the death penalty.[16]

Significantly reducing the availability of habeas relief for constitutional violations for the purpose of augmenting the deterrent and retributive purposes of State death penalty laws is neither within the scope of Congress's enumerated powers nor a legitimate end that Congress pursued in a manner consistent with the spirit or letter of the Fourteenth Amendment. Indeed, there is "no better example of the police power, which the Founders *denied* the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Morrison*, 529 U.S. at 618 (emphasis added).

---

[15] *Garceau*, 538 U.S. at 206. When AEDPA became law on April 24, 1996, thirty-eight States had the death penalty. Since then, eleven States have abolished or abandoned it. Four States' governors (six governors in all) imposed moratoria on executions *See State by State*, Death Penalty Info. Ctr., https://deathpenaltyinfo.org/state-and-federal-info/state-by-state (last visited Jul. 7, 2025). Five of the six governors who imposed moratoria after AEDPA expedited review of capital sentences, making it more difficult for federal courts to remedy errors cited as reasons for halting executions—a lack of faith in the fairness or equity of the system. *See Statements from Governors Imposing Moratoria on Executions*, Death Penalty Info. Ctr., https://deathpenaltyinfo.org/stories/statements-from-governors-imposing-moratoria-on-executions (last visited July 22, 2025).

[16] *E.g.*, *Calderon v. Tompson*, 523 U.S. 538, 555 (1998); *Teague v. Lane*, 489 U.S. 288, 309 (1989); *McCleskey v. Zant*, 499 U.S. 467, 491-92 (1991).

### 2. Shrinking the Habeas Privilege for All State Prisoners to Promote the Death Penalty in Some States Violates the Equal Sovereignty Principle.

Assuming *arguendo* that Congress had the constitutional authority to change federal habeas law to promote the efficacy of some States' use of the death penalty, that disparate treatment of States' interests raises another constitutional problem: it is a "departure from the principle that all States enjoy equal sovereignty." *Shelby County, Ala. v. Holder*, 570 U.S. 529, 535 (2013). That principle generally requires that national legislation treat our Nation as "a union of States, equal in power, dignity and authority." *Id.* at 544 (quoting *Coyle v. Smith*, 221 U.S. 559, 567 (1911)). "[A] departure from the fundamental principle of equal sovereignty requires a showing that a statute's disparate geographic coverage is sufficiently related to the problem that it targets." *Id.* at 542 (quoting *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 192, 203 (2009)). Only "exceptional conditions can justify legislative measures not otherwise appropriate." *Id.* at 535 (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966)). And even if such conditions were present at the time of AEDPA's enactment, "the Act imposes current burdens and must be justified by current needs." *Id.* at 536 (quoting *Northwest Austin*, 557 U.S. at 203).

Although § 2254(d)–(e) apply to all federal habeas petitions, their purpose and effect is to further the purported penological interests of states retaining capital punishment. *See* Section II.B.1, *supra*. Thus, AEDPA singles out for preferential

11

treatment the small subset of states who regularly impose and carry out death sentences.[17]

No exceptional conditions, however, currently exist to justify such "an extraordinary departure from the traditional course of relations between the States and the Federal Government." *Shelby County*, 570 U.S. at 545 (internal quotation marks omitted). It is true that before AEDPA, States could and did set execution dates at any time before death-sentenced persons sought federal habeas relief, resulting in inefficiency and "unnecessary delay and repetition" in capital litigation as petitioners were forced to move back and forth between state and federal court.[18] Federal law permitted habeas review to delay execution of a death sentence if the applicant made a substantial showing of the denial of a federal right. *Barefoot v. Estelle*, 463 U.S. 880, 892-93 (1983); *McFarland*, 512 U.S. at 857-58. This state of affairs was exacerbated by a general lack of competent and resourced post-conviction counsel, requiring those attorneys to prioritize cases where execution was imminent. Powell Comm. Rep. at 4. Since AEDPA's passage, however, these issues have largely abated. *See* 1 Hertz & Liebman, § 13.1. Thus, even if there were "exceptional conditions" justifying

---

[17] Although a supermajority of states authorized capital punishment at the time of AEDPA's enactment, that number has since fallen to a bare majority, most of whom rarely seek or employ it. *See supra* note 14; Death Penalty Info. Ctr., *The Death Penalty in 2024*, at 7, 30-32, 58-59 (Dec. 19, 2024), https://dpic-cdn.org/production/documents/DPI-2024-Year-End-Report.pdf?dm=1735847939.

[18] Powell Comm. Rep. at 2-3; *see, e.g.*, *McFarland v. Scott*, 512 U.S. 851-52 & n.1 (1994); *see also* 1 Randy A. Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* §§ 6.3, 13.1, 13.3 (Lexis 2024).

AEDPA's "strong medicine" in 1996, *see Shelby County*, 470 U.S. at 535, no such "current needs" remain, *id.* at 550-51.

Moreover, AEDPA's "extraordinary" nature is evident from its breadth. AEDPA reduces post-sentencing delays in all cases, and post-execution delays in all non-capital cases, through imposition of a one-year statute of limitations, 28 U.S.C. § 2244(d), and by requiring that federal courts find that § 2254(d)–(e) do not bar relief before delving into the merits of the applicant's claims. *Garceau*, 538 U.S. at 206. AEDPA also requires Article III deference to non-Article-III (and often political) actors on matters of constitutional interpretation, an "extraordinary [feature] otherwise unfamiliar to our federal system." *Shelby County*, 570 U.S. at 545 (internal quotation marks omitted).[19]  Absent a compelling reason, the Constitution cannot abide such "a dramatic departure from basic principles of federalism," *id.* at 535, and the separation of powers.

## C.    AEDPA CONTRAVENES CONGRESS'S RESPONSIBILITY UNDER SECTION 5 OF THE FOURTEENTH AMENDMENT.

Congress enacted AEDPA "to further the principles of comity, finality, and federalism."[20] These goals overlap with the goal of promoting some States' penological

---

[19] *See Loper Bright v. Raimondo*, 603 U.S. 369, 412-13 (2024); Anthony G. Amsterdam & James S. Liebman, Loper Bright *and the Great Writ*, 56 Colum. Hum. Rts. L. Rev. 54, 62 (2025); *see also* Petitioner's Motion to Declare 28 U.S.C. 2254(d)–(e) Unconstitutional Under Loper Bright.

[20] *Garceau*, 538 U.S. at 206 (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)); *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009).

schemes.[21] Congress, however, has no enumerated power to pass legislation for the abstract purpose of furthering principles, regulating relations between the state and federal courts, hastening the "finality" of state criminal judgments, or advancing federalism in the contexts of constitutional adjudication or state penal laws. Assuming for the sake of argument that the Necessary and Proper Clause gives Congress the power to constitute the lower federal courts in such a way that they further the principles of comity, finality, and federalism, AEDPA's ends remain neither "within the scope of the constitution" nor consistent with its letter and spirit.

AEDPA's pre-Civil War conception of federalism undermines the "structural changes to the nation's legal order" codified in the Reconstruction Amendments.[22] Congress enacted the Habeas Corpus Act of 1867 under § 2 of the Thirteenth Amendment to enforce provisions of the Civil Rights Act of 1866, the precursor to § 1 of the Fourteenth Amendment. *See Slaughter-House*, 83 U.S. at 69 (citing *In re Turner*, 24 F. Cas. 337 (C.C.D. Md. 1867)). "Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting

---

[21] *See Shinn v. Ramirez*, 596 U.S. 366, 376-77 (2022) (Federal habeas relief "overrides the State's sovereign power to enforce 'societal norms through criminal law.'" (quoting *Calderon*, 523 U.S. at 556)); *Richter*, 562 U.S. at 103 (similar); Powell Comm. Rep. at 3 ("[T]he delay in cases where an execution has occurred[] makes clear that the present system of collateral review operates to frustrate the law of 37 States.").

[22] Laura F. Edwards, *A Legal History of the Civil War and Reconstruction* 66 (2015); *accord Younger v. Harris*, 401 U.S. 37, 61 (1971) (Douglas, J., dissenting) ("Whatever the balance of the pressures of localism and nationalism prior to the Civil War, they were fundamentally altered by the war. The Civil War Amendments made civil rights a national concern. Those Amendments, especially § 5 of the Fourteenth Amendment, cemented the change in American federalism brought on by the war.").

'appropriate legislation.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365 (2001).

"'Congress' power "to enforce" the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights … by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text.'" *Ibid.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)). AEDPA does the opposite: it narrows the effective scope of constitutional protections[23]—specifically, those guarantees made applicable to the States by § 1 of the Fourteenth Amendment—and creates incentives for state actors to pursue "ingenious defiance of the Constitution." *Katzenbach*, 383 U.S. at 309 (quoted with approval in *Shelby County*, 570 U.S. at 535). But "'the power "to enforce," [is] not the power to determine *what constitutes* a constitutional violation.' …. The ultimate **interpretation and determination** of the Fourteenth Amendment's substantive meaning **remains the province of the Judicial Branch**." *Kimel*, 528 U.S. at 81 (quoting *Boerne*, 521 U.S. at 519, and citing *id.* at 536) (italics in original; bolding added). AEDPA's amendments to § 2254(d)–(e) unconstitutionally delegate those interpretive and determinative functions to state courts, including wholly political state courts. *See Loper Bright*, 603 U.S. at 412-13. This undermines the strict separation of powers—at the expense

---

[23] For this reason, the "congruence and proportionality" test—which applies when Congress prohibits conduct beyond that covered by the Fourteenth Amendment—is inapplicable here. *See Garrett*, 531 U.S. at 365 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (2000)).

of life and liberty—just as if Congress purported "to decree the substance of the Fourteenth Amendment's restrictions on the States" itself. *See Boerne*, 521 U.S. at 519.

Rather than providing a remedy for constitutional violations, AEDPA "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. And instead of deterring violations by the States to whom § 1 of the Fourteenth Amendment is addressed, AEDPA removes the incentive state courts previously had to make "good-faith attempts to honor constitutional rights," *Coleman v. Thompson*, 523 U.S. 538, 555-56 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 487 (1986)), by precluding independent Article III determinations of what the Constitution requires in a given case and sanctioning state-court determinations that range from merely wrong to beyond clearly erroneous. *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

AEDPA's negative effect on Section 1 of the Fourteenth Amendment is no accident. Section 2254(d)(1)'s "standard is difficult to meet," *Richter*, 562 U.S. at 102, *so that* independent Article III determinations about the substantive meaning of constitutional rights cannot "frustrate[] … the State's sovereign power to punish offenders …." *Id*. at 103 (quoting *Coleman*, 523 U.S. at 555-56). In sum, in its name, text, and under the Supreme Court's controlling interpretation of its purpose, AEDPA promotes some States' police powers—an "effective death penalty"—at the expense of both the vindication of constitutional rights and the proper exercise of the Nation's

16

judicial power by Article III courts.[24] While Article I, § 8 *implies* that Congress has the power to enact procedures for the inferior federal courts, Section 5's more recent and specific enforcement power precludes Congress from exercising its implied power through legislation that subverts the identification and enforcement of rights and privileges expressly guaranteed elsewhere in the Constitution.[25]

Elevating States' interests in imposing criminal sanctions at the expense of individuals' constitutional rights is antithetical Congress's enforcement role—its *only* role—under Section 5 of the Fourteenth Amendment, and equally antithetical to the original public meaning of the habeas privilege secured for state prisoners during the Second Founding. *See* Section II.A, *supra*. This fact is fatal to § 2254(d)–(e), regardless of one's view of AEDPA's propriety as a matter of public or judicial policy. *See D.C. v. Heller*, 554 U.S. 570, 634-35 (2008) ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."); *United States v. Connelly*, 117 F.4th 269, 281 (5th Cir. 2024). Sections 2254(d) and (e) must be declared void.

---

[24] And contrary to AEDPA's assertion otherwise, its amendments to § 2244(b) actually undermine comity, finality, and federalism by creating an incentive for state officials to delay fulfilling their duties to state courts, the Constitution, and the timely administration of the law by withholding exculpatory material from defendants throughout trial, appeal, and state and federal collateral review. *See, e.g., Glossip v. Oklahoma*, 145 S. Ct. 612, 618, 621-23 (2025) (describing the State's disclosure of critical evidence establishing *Napue* violation almost two decades after trial and following multiple rounds of unsuccessful state and federal habeas petitions).

[25] *E.g., Boerne*, 521 U.S. at 536; *Kimel*, 528 U.S. at 91; *Garrett*, 531 U.S. at 374.

## III.  CONCLUSION

For the foregoing reasons, when this Court lifts the stay of these proceedings, it should hold a hearing on this Motion and then enter an order declaring 28 U.S.C. §§ 2254(d) and (e)(1) to be void under the constructions and interpretations Texas has invoked in this case.

DATED:  July 23, 2025                    Respectfully submitted,

                                         MAUREEN FRANCO
                                         FEDERAL PUBLIC DEFENDER

                                          /s/ Tivon Schardl
                                         TIVON SCHARDL
                                         Chief, Capital Habeas Unit
                                         SBOT #24127495
                                         Federal Defender Office
                                         919 Congress, Suite 950
                                         Austin, Texas 78701
                                         737-207-3007 (tel.)
                                         512-499-1584 (fax)

                                         /s/ Joseph J. Perkovich
                                         JOSEPH J. PERKOVICH
                                         Co-Counsel for Petitioner
                                         Phillips Black, Inc.
                                         PO Box 2171
                                         New York, NY 10008
                                         (212) 400-1660 (tel.)
                                         j.perkovich@phillipsblack.org

                                         Attorneys for Petitioner Tyrone Cade

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, I electronically filed the foregoing, Petitioner's Motion To Declare Void 28 U.S.C. §§ 2254(D) & (E)(1) As Texas Seeks To Have Them Applied To This Case, with the Clerk of Court using the CM/ECF system which will send notify all counsel of record of this filing.

*/S/ Tivon Schardl*
TIVON SCHARDL